UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

PAUL PHILIPPE OF ROMANIA, on behalf of the
ESTATE OF KING CAROL II OF ROMANIA,

          Plaintiff,

    - against -

CHRISTIE'S, INC.,

          Defendant.

------------------------------------------------------------X

CHRISTIE'S INC.,

         Counterclaim and Third-Party
         Plaintiff,

    - against -

PAUL PHILIPPE OF ROMANIA, on behalf of the
ESTATE OF KING CAROL II OF ROMANIA,

         Counterclaim Defendant, and

ACCENT DELIGHT INTERNATIONAL LTD. and
STATE OF ROMANIA

         Third-Party Defendants.

------------------------------------------------------------X

Case No. 1:25-cv-01151-LLS

**DEFENDANT CHRISTIE'S INC.'S ANSWER, AFFIRMATIVE DEFENSES, INTERPLEADER COUNTERCLAIM AND THIRD-PARTY CLAIM TO COMPLAINT**

Defendant Christie's Inc. ("Christie's"), by its attorneys Womble Bond Dickinson (US) LLP, for its answer and affirmative Defenses to the Complaint (the "Complaint") by Plaintiff Paul Philippe of Romania, on Behalf of the Estate of King Carol II of Romania ("Philippe"), states as follows:

## **ANSWER**

1.    Christie's denies the allegations in paragraph 1 of the Complaint, except that Christie's denies knowledge or information sufficient to form a belief as to the truth of the

allegations concerning ownership of *Saint Sébastien* (the "Painting") and Plaintiff's familial history, including footnote 1.

2. Christie's denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 2 of the Complaint.

3. Christie's admits that it obtained possession of the Painting from a consignor and that the Painting was intended to be sold at auction. Christie's otherwise denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 3 of the Complaint.

4. Christie's denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 4 of the Complaint.

5. Christie's denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 5 of the Complaint.

6. Christie's denies Plaintiff's allegations that the Painting "resurfaced" and that the Romanian government "intervened." Christie's otherwise admits the allegations of paragraph 6 of the Complaint, and respectfully refers the Court to the exhibits referenced therein for the full content and true meaning thereof.

7. Christie's denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 7 of the Complaint and respectfully refers the Court to "Romania's 1985 New York Action," as defined therein, to which this Court may take judicial notice.

8. Christie's denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 8 of the Complaint and respectfully refers all questions of law to this Court.

9. Christie's denies the allegation that its decision to stop the sale raises a distinct

likelihood that the consignor will remove the painting from New York and otherwise denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 9 of the Complaint.

10. Christie's denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 10 of the Complaint.

11. Christie's admits the allegations in paragraph 11 of the Complaint.

12. The allegations contained in paragraph 12 of the Complaint are jurisdictional in nature and therefore require no response. To the extent a response is deemed required, Christie's admits the allegations contained in paragraph 12 of the Complaint.

13. The allegations contained in paragraph 13 of the Complaint are jurisdictional in nature and therefore require no response. To the extent a response is deemed required, Christie's admits the allegations contained in paragraph 13 of the Complaint.

14. Christie's denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 14 of the Complaint.

15. Christie's denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 15 of the Complaint.

16. Christie's denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 16 of the Complaint.

17. Christie's denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 17 of the Complaint.

18. Christie's denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 18 of the Complaint.

19. Christie's denies knowledge or information sufficient to form a belief as to the truth

of the allegations in paragraph 19 of the Complaint.

20. Christie's denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 20 of the Complaint.

21. Christie's denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 21 of the Complaint.

22. Christie's denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 22 of the Complaint.

23. Christie's denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 23 of the Complaint.

24. Christie's denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 24 of the Complaint.

25. Christie's denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 25 of the Complaint.

26. Christie's denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 26 of the Complaint.

27. Christie's denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 27 of the Complaint.

28. Christie's denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 28 of the Complaint.

29. Christie's denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 29 of the Complaint.

30. Christie's denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 30 of the Complaint and respectfully refers the Court to "Romania's

1984 Texas Action," as defined therein, to which this Court may take judicial notice.

31. Christie's denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 31 of the Complaint and respectfully refers the Court to "Romania's 1985 New York Action" and "Romania's 1984 Texas Action," as defined therein, to which this Court may take judicial notice.

32. Christie's denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 32 of the Complaint and respectfully refers the Court to "Romania's 1993 New York Action," as defined therein, to which this Court may take judicial notice.

33. Christie's denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 33 of the Complaint.

34. Christie's denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 34 of the Complaint and respectfully refers all questions of law to this Court.

35. Christie's denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 35 of the Complaint.

36. Christie's admits that the Painting is presently located in New York, otherwise denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 36 of the Complaint, and respectfully refers all questions of law to this Court.

37. Christie's denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 37 of the Complaint.

38. Christie's denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 38 of the Complaint.

39. Christie's denies knowledge or information sufficient to form a belief as to the truth

of the allegations in paragraph 39 of the Complaint.

40. Christie's denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 40 of the Complaint.

41. Christie's denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 41 of the Complaint.

42. Christie's denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 42 of the Complaint.

43. Christie's denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 43 of the Complaint.

44. Christie's denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 44 of the Complaint.

45. Christie's denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 45 of the Complaint.

46. Christie's denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 46 of the Complaint.

47. Christie's denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 47 of the Complaint.

48. Christie's denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 48 of the Complaint.

49. Christie's denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 49 of the Complaint.

50. Christie's denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 50 of the Complaint.

51. Christie's denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 51 of the Complaint.

52. Christie's denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 52 of the Complaint.

53. Christie's denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 53 of the Complaint.

54. Christie's repeats, reiterates and realleges its responses to the allegations set forth in paragraphs 1 through 53 of the Complaint as though fully set forth herein.

55. Christie's denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 55 of the Complaint.

56. Christie's denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 56 of the Complaint.

57. Christie's admits that the Painting is now in New York City, that it was to be auctioned, and that Christie's decided not to sell the Painting in that auction. Christie's otherwise denies the allegation in paragraph 57 of the Complaint.

58. Christie's denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 58 of the Complaint.

59. Christie's admits the allegations in paragraph 59 of the Complaint.

60. Christie's admits that Plaintiff demanded the Painting and otherwise denies the allegations in paragraph 60 of the Complaint.

61. Christie's denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 61 of the Complaint and respectfully refers all questions of law to this Court.

62. Christie's denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 62 of the Complaint and respectfully refers all questions of law to this Court.

63. The jury demand allegation contained in paragraph 63 of the Complaint requires no response. To the extent a response is deemed required, Christie's denies the allegations contained in paragraph 63 of the Complaint.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Plaintiff lacks standing to bring this action.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff is precluded, estopped and/or barred from pursuing its alleged cause of action by virtue of its own, or its agents', culpable conduct, contributory negligence and/or fault, which caused and/or contributed to the breaches, violations and/or damages alleged in the Complaint, if and to the extent that such breaches, violations and/or damages occurred or were incurred, which is denied.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff is precluded, estopped and/or barred from pursuing its alleged causes of action by virtue of Plaintiff's unclean hands.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff is precluded, estopped and/or barred from pursuing its alleged cause of action by virtue of the doctrines of waiver and estoppel.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff is precluded, estopped and/or barred from pursuing its alleged cause of action by

virtue of the doctrine of laches.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiff is precluded, estopped and/or barred from pursuing its alleged cause of action by virtue of the applicable statute of limitations.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiff claims are refuted by documentary evidence.

### EIGHTH AFFIRMATIVE DEFENSE

Plaintiff fails to state a claim upon which relief may be granted.

### NINETH AFFIRMATIVE DEFENSE

Plaintiff is precluded, estopped and/or barred from pursuing its alleged cause of action to the extent that any injury suffered by Plaintiff was caused by third parties over whom Christie's has no control.

### TENTH AFFIRMATIVE DEFENSE

Christie's is a disinterested stakeholder holding the Painting which Plaintiff and other parties, as discussed below, claim to own. Christie's is therefore subject to potential liability from Plaintiff and these other parties and therefore cannot turn over the Painting to any of the claimants absent an order from the Court or agreement of the parties.

### ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff has failed to include necessary and indispensable parties in this action.

Christie's reserves the right to assert additional affirmative defenses as discovery progresses.

## INTERPLEADER COUNTERCLAIM AND THIRD-PARTY CLAIM

1.  Interpleader Counterclaim Plaintiff and Third-Party Plaintiff Christie's Inc. ("Christie's"), by its attorneys Womble Bond Dickinson (US) LLP, for its interpleader counterclaim against Paul Philippe of Romania, on Behalf of the Estate of King Carol II of Romania ("Philippe") and its interpleader third-party claim against Accent Delight International Ltd. ("Accent Delight") and State of Romania ("Romania"), pursuant to Rule 22 of the Federal Rules of Civil Procedure, states as follows:

### NATURE OF THE ACTION

2.  This is an interpleader counterclaim and third-party claim for the determination of whether Philippe, Accent Delight or Romania (collectively "the Interpleader Defendants") has superior right, title and interest in a painting titled *Saint Sébastien* by Spanish renaissance "Old Master" artist Doménikos Theotokópoulos, widely known as El Greco (the "Painting"). Christie's is currently in possession of the Painting but makes no claim of ownership to the Painting. Furthermore, Christie's may be exposed to multiple liability as a result of the adverse claims of the Interpleader Defendants.

### THE PARTIES

3.  Christie's is a company incorporated under the laws of the State of New York, with its principal place of business at 20 Rockefeller Plaza, County of New York, New York, and is authorized to transact business in the state of New York.

4.  Philippe is a citizen of the United Kingdom and Romania who currently resides in France.

5.  Accent Delight is an entity incorporated in the British Virgin Islands.

6.  Romania is a foreign state, as defined in 28 U.S.C. § 1603(a).

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because there is complete diversity between Christie's, on the one hand, and Philipe, Accent Delight and Romania, on the other hand, and the amount at issue exceeds $75,000, exclusive of interests and costs.

8. Romania may be sued in this action as it is subject to one or more of the exceptions set out in the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602-1611. Specifically, the Painting is claimed to be the lawful property of the State of Romania, wrongfully removed from the country in 1947 (28 U.S.C. § 1605(a)(3)); and the Painting is located in the United States (28 U.S.C. § 1605(a)(4)).

9. Venue is proper in this district: (i) under 28 U.S.C. § 1391(b)(1) because Christie's resides in this district; (ii) under 28 U.S.C. § 1391(b)(2) because the property that is the subject of this action is situated in this district; and (iii) under 28 U.S.C. § 1391(b)(3) because Philipe, having commenced this action, is subject to this court's personal jurisdiction with respect to such action.

## FACTS

### Consignment of Painting to Christie's

10. As of August 2025, the Painting was in Accent Delight's possession.

11. On or about September 4, 2025, Accent Delight agreed to consign the Painting to Christie's pursuant to a Seller's Agreement executed by the parties whereby Christie's would offer the Painting for public auction at its Old Masters sale in New York on February 5, 2025 (the "Sale").

12. In the Seller's Agreement, Accent Delight warranted that, *inter alia*, it is the owner of the Painting.

13.     As part of Christie's efforts to market and promote the artworks offered in the Sale, Christie's publicly listed the Painting on its website, www.christies.com, with the following provenance:

> (Possibly) in the artist's studio, Toledo, at the time of his death and included in his post-mortem inventories of 12 April and 7 July 1614 and by descent to his son,
> (Possibly) Jorge Manuel Theotocópuli (1578-1631), Toledo, included in his inventory of 7 August 1621.
> King Carol I of Romania (1839-1914), Cotroceni Palace, Bucharest by 1898, bequeathed to the institution of the Romanian Crown by King Carol I in his Testament of 14/26 February 1899,
> Property of the Romanian Crown, Bucharest, 1914-1947,
> Ownership transferred to King Michael I of Romania (1921-2017), 11/12 November 1947, with the accord of the Romanian government, by whom sold to the below in 1976,
> with Wildenstein & Co., New York, in 1976 until acquired, through Giraud Pissarro Ségalot, New York, by the present owner in 2010.

**<u>Claim by Romania</u>**

14.     By letter dated January 29, 2025 from Romania's counsel to Christie's, Romania asserted a claim of ownership to the Painting.

15.     In the letter, Romania's counsel contended that the Painting is the lawful property of the State of Romania and demanded that the Painting be withdrawn from the sale, retained and, safely kept by Christie's in New York City, and once proper arrangements can be made, released and returned to Romania.

16.     In response to the provenance listed above, Romania's counsel argued that no ownership could have been transferred back to King Michael I by an "accord" of the Romanian government. Counsel added that the Painting's removal from the country in November 1947, by former King Michael I, was unlawful.

17.     On or about January 30, 2025, Christie's withdrew the Painting from the Sale.

**Action by Philippe**

18. On February 9, 2025, Philippe, who claims to be a member of the former Romanian royal family and grandson and principal heir to King Carol II ("Carol II"), commenced this replevin action purportedly on behalf of the estate Carol II against Christie's demanding return of the Painting, which Philippe contends was stolen from Carol II's personal collection in 1947.

19. On February 10, 2025, Philippe filed an order to show cause for a temporary restraining order ("TRO") and a preliminary injunction, which would enjoin Christie's during the pendency of this action from transferring possession of the Painting or moving the artwork from Christie's New York facilities.

20. This Court granted the TRO on February 10, 2025, and the preliminary injunction hearing is presently scheduled for March 3, 2025.

## GROUNDS FOR INTERPLEADER

21. Christie's concedes that it does not own the Painting, and it does not dispute that there are multiple claims of ownership to the Painting.

22. Philippe, Accent Delight and Romania separately claim legal ownership to the Painting.

23. Christie's is an innocent stakeholder and unaware of the respective rights of the Interpleader Defendants. Christie's is unable to ascertain, without hazard to itself, to which of the Interpleader Defendants the Painting belongs.

24. Christie's reasonably believes that it may face multiple suits and be subject to multiple liability because of the Interpleader Defendants' conflicting claims to the Painting. A determination of the lawful owner of the Painting needs to be settled in a single forum in a manner that is binding on all of the Interpleader Defendants. Accordingly, Christie's seeks this interpleader

13

to protect itself from the vexation of multiple suits and the possibility of multiple liability.

25.   Other than Christie's claim for costs, including but not limited to storage and insurance costs for the Painting, and reasonable attorneys' fees incurred in defending and prosecuting this action, Christie's has no claim to the Painting.

26.   Christie's seeks to be discharged as a disinterested stakeholder and is ready and willing to deliver the Painting to such person or entity as the Court shall order. If ordered by the Court, Christie's is willing to maintain possession of the Painting at its New York location until this matter is resolved, with the Interpleader Defendants agreeing to pay Christie's the related storage and insurance costs.

27.   This interpleader counterclaim and third-party claim is not brought by collusion with any of the Interpleader Defendants.

WHEREFORE, Christie's demands judgment that:

1.   Interpleader Defendants be permanently restrained by injunction from commencing or prosecuting any action or proceeding against Christie's in relation to the above claims;

2.   Interpleader Defendants be ordered to interplead and resolve among themselves their respective claims to the Painting at issue;

3.   Christie's be directed to remit the Painting to the Court or with such other person or entity that the Court may direct or the Interpleader Defendants may agree, or authorized by the Court to retain the Painting pending such litigation;

4.   Once the Painting has been interpleaded, Christie's be discharged from all liability to any of the Interpleader Defendants in relation to this matter;

5.   Christie's recover its costs, including but not limited to storage and insurance costs for the Painting, and reasonable attorneys' fees as the Court determines appropriate from and

among the Interpleader Defendants; and

      6.     Christie's recover such other relief as the Court deems just and proper.

Dated: New York, New York
       February 26, 2025

WOMBLE BOND DICKINSON (US) LLP

 /s/ Joseph A. Patella
Joseph A. Patella
950 Third Avenue, Suite 2400
New York, NY 10022
(332) 258-8483
Joseph.Patella@wbd-us.com
*Attorneys for Defendant/Interpleader Counterclaim Plaintiff Christie's Inc.*