**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------x

PAUL PHILIPPE OF ROMANIA, on : 
behalf of the ESTATE OF KING CAROL :
II OF ROMANIA, :
             Plaintiff, :    Case No.: 1:25-1151-LLS
                     :
    -against - :
                     :
CHRISTIE'S, INC., :
          Defendant. :
--------------------------------------------------------x

CHRISTIE'S, INC., :    **VERIFIED ANSWER OF PAUL**
                     :    **PHILIPPE OF ROMANIA, ON BEHALF**
                     :    **OF THE ESTATE OF KING CAROL II**
         Counterclaim and :    **OF ROMANIA, TO CHRISTIE'S**
         Third-Party Plaintiff, :    **INTERPLEADER COUNTERCLAIM**
                     :
    -against- :
                     :
PAUL PHILIPPE OF ROMANIA, on :
Behalf of the ESTATE OF KING CAROL :
II OF ROMANIA, :
                     :
         Counterclaim :
         Defendant :
                     :
ACCENT DELIGHT INTERNATIONAL :
LTD. and STATE OF ROMANIA :
--------------------------------------------------------x

      Plaintiff PAUL PHILIPPE OF ROMANIA, on behalf of the ESTATE OF KING CAROL

II OF ROMANIA ("Paul Philippe"), answers the Interpleader Counterclaim and Third-Party Claim

[ECF 18 at pp. 10-15] (the "Interpleader Counterclaim") filed by Defendant Christie's, Inc.

("Christie's") as follows:

## ANSWER

      1.    Paragraph 1 of the Interpleader Counterclaim consists of a legal assertion that the

Interpleader Counterclaim constitutes an interpleader counterclaim and third-party claim against

Paul Philippe, Accent Delight International Ltd. ("Accent Delight") and the State of Romania

("Romania") to which no response is required. To the extent a response is deemed required, Paul

Philippe admits the allegations contained in paragraph 1 of the Interpleader Counterclaim.

## ANSWER TO "NATURE OF THE ACTION"

2.      Paul Philippe admits the allegation in paragraph 2 of the Interpleader Counterclaim

that Christie's is currently in possession of a painting titled *Saint Sébastien* by Spanish renaissance

"Old Master" artist Doménikos Theotokópoulos, widely known as El Greco (the "Painting") but

makes no claim of ownership to the Painting. The remaining allegations in paragraph 2 consist of

legal assertions to which no response is required. To the extent a response is deemed required,

Paul Philippe admits the allegations contained in paragraph 2 of the Interpleader Counterclaim.

3.      Paul Philippe lacks knowledge or information sufficient to form a belief about the

truth of the allegations set forth in paragraph 3 of the Interpleader Counterclaim, although he avers

that those allegations are consistent with publicly available information on the website of the New

York Department of State.

4.      Paul Philippe admits the allegations set forth in paragraph 4 of the Interpleader

Counterclaim.

5.      Paul Philippe lacks knowledge or information sufficient to form a belief about the

truth of the allegations set forth in paragraph 5 of the Interpleader Counterclaim.

6.      Paul Philippe admits the allegations set forth in paragraph 6 of the Interpleader

Counterclaim.

## ANSWER TO "THE PARTIES"

7.       The allegations in paragraph 7 of the Interpleader Counterclaim consist of legal

assertions to which no response is required. To the extent a response is deemed required, Paul

Philippe admits the allegations contained in paragraph 7 of the Counterclaim.

8.      The allegations in paragraph 8 of the Interpleader Counterclaim consist of legal assertions to which no response is required. To the extent a response is deemed required, Paul Philippe admits the allegations contained in paragraph 8 of the Counterclaim.

9.      The allegations in paragraph 9 of the Interpleader Counterclaim consist of legal assertions to which no response is required. To the extent a response is deemed required, Paul Philippe admits the allegations contained in paragraph 9 of the Counterclaim.

## ANSWER TO "FACTS"

### Answer to "Consignment of Painting to Christie's"

10.     Paul Philippe lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in paragraph 10 of the Interpleader Counterclaim, although he avers that the date "August 2025" appears to be a typographical error intended to be "August 2024."

11.      Paul Philippe lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in paragraph 11 of the Interpleader Counterclaim, although he avers that the date "September 4, 2025" appears to be a typographical error intended to be "September 4, 2024."

12.     Paul Philippe lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in paragraph 12 of the Interpleader Counterclaim, although he avers that the lawful owner of the Painting is the Estate of King Carol II of Romania.

13.      Paul Philippe lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in paragraph 13 of the Interpleader Counterclaim, although he

avers that the provenance set forth in paragraph 13 and ascribed to the Painting is inaccurate. First, the Painting was owned by King Carol II of Romania from at least 1930 through his death in 1953 and thereafter by his estate to the present day. Second, ownership of the Painting was never transferred to ex-king Michael of Romania. Third, the Romanian government neither agreed to transfer the Painting to Michael nor had the lawful authority to do so. Fourth, Michael himself recognized that his father, Carol II, owned the Painting, *see* Verified Complaint [ECF 1] at ¶¶ 20-24, and when Michael sold the Painting and another El Greco, *Canon Bosio*, to Wildenstein in 1977, he falsely represented that the sale was being made by all Carol II's "heirs," *id*. at ¶¶ 25-29.

### Answer to "Claim by Romania"

14.     Paul Philippe lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in paragraph 14 of the Interpleader Counterclaim, although he avers that (i) Romania is not the owner of the Painting; (ii) any claim Romania had to the Painting was extinguished when its lawsuit, *Socialist Republic of Romania v. Wildenstein*, 85 Civ. 2435 (SDNY), was dismissed with prejudice in 1986, *see* Complaint [ECF 1] at, *e.g.*, ¶ 7, and Exhibit 3 (1993 SDNY decision denying Romania's motion to vacate 1986 dismissal); and (iii) the Estate of King Carol II of Romania is the lawful owner of the Painting.

15.     Paul Philippe lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in paragraph 15 of the Interpleader Counterclaim, although he repeats the averments set forth, *supra*, at paragraph 14.

16.     Paul Philippe lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in paragraph 16 of the Interpleader Counterclaim, although he repeats the averments set forth, *supra*, at paragraph 14 and, in addition, avers (iv) that ownership

of the Painting could not have been transferred to Michael by an "accord" of the Romanian government; (v) no such accord was made or given; and (vi) Michael stole the Painting from his father, Carol II, by taking it out of Romania in November 1947, hiding it for 30 years, and then selling it to Wildenstein in 1977 without notice to, or approval by, Carol II's other heirs.

17.    Paul Philippe lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in paragraph 17 of the Interpleader Counterclaim, although he avers that those allegations are consistent with press reports and Christie's admission that the Painting is in its possession.

### Answer to "Action by Philippe"

18.    Paul Philippe admits the allegations set forth in paragraph 18 of the Interpleader Counterclaim, although he avers (i) he is a member of the former Romanian royal family and grandson and principal heir to King Carol II; (ii) he commenced this replevin action on behalf of Carol II's estate; and (iii) ex-king Michael stole the Painting from his father, Carol II, by taking it out of Romania in November 1947, hiding it for 30 years, and then selling it to Wildenstein in 1977 without notice to, or approval by, Carol II's other heirs.

19.    Paul Philippe admits the allegations set forth in paragraph 19 of the Interpleader Counterclaim.

20.    Paul Philippe admits the allegations set forth in paragraph 20 of the Interpleader Counterclaim, except that the preliminary injunction hearing is now scheduled for July 1, 2025.

### ANSWER TO "GROUNDS FOR INTERPLEADER"

21.    Paul Philippe admits the allegations set forth in paragraph 21 of the Interpleader Counterclaim.

22.    Paul Philippe admits that he claims legal ownership of the Painting on behalf of Carol II's Estate. He lacks knowledge or information sufficient to form a belief about the truth of the other allegations set forth in paragraph 22 of the Interpleader Counterclaim, although those allegations are consistent with press reports.

23.    Paul Philippe lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in paragraph 23 of the Interpleader Counterclaim, although those allegations are consistent with press reports.

24.    Paul Philippe admits the allegation set forth in paragraph 24 of the Interpleader Counterclaim that a determination of the lawful owner of the Painting needs to be settled in a single forum in a manner that is binding on all the Interpleader Defendants. Paul Philippe lacks knowledge or information sufficient to form a belief about the truth of the other allegations set forth in paragraph 24, although those allegations are consistent with press reports.

25.    Paul Philippe admits the allegation set forth in paragraph 25 of the Interpleader Counterclaim that Christie's has no claim to the Painting. The other allegations set forth in paragraph 25 are legal assertions to which no response is required. To the extent a response is deemed required, Paul Philippe denies those other allegations contained in paragraph 25 of the Interpleader Counterclaim.

26.    The allegations set forth in paragraph 26 describe the legal relief Christie's seeks in this Interpleader action and extend a conditional offer to maintain possession of the Painting at Christie's New York location until this matter is resolved. Because those are not factual allegations, a response is not required. To the extent a response is deemed required, Paul Philippe avers (i) he has no objection to discharging Christie's as a disinterested stakeholder provided that

the other Interpleader Defendants appear in this action and the Court issues an affirmative

preliminary injunction requiring Christie's to maintain possession of the Painting at its New York

location until this Court makes a binding determination as to the Painting's lawful owner; and (ii)

he is willing to share reasonable storage and insurance costs with the other Interpleader Defendants

from February 10, 2025, the date of the Court's temporary restraining order.

27.     Paul Philippe admits the allegation set forth in paragraph 27 of the Interpleader

Counterclaim that he has not colluded with Christie's to bring this interpleader action. He lacks

knowledge or information sufficient to form a belief about the truth of the other allegations set

forth in paragraph 27.

WHEREFORE, Prince Paul Philippe of Romania demands, on behalf of the Estate of Carol

II, as follows:

(i)     An Affirmative Preliminary Injunction requiring Christie's to maintain *Saint Sébastien* in its New York location pending this Court's determination of the competing ownership claims of all Interpleader Defendants, with storage and insurance costs from February 10, 2025 to be shared by the Interpleader Defendants;

(ii)    An Order directing Christie's to serve its Interpleader Complaint on Access Delight, Romania, and any other party that Christie's has reason to believe may assert an ownership claim to *Saint Sébastien* by April 6, 2025;

(iii)   Judgment awarding ownership of *Saint Sébastien* to Paul Philippe on behalf of the Estate of King Carol II;

(iv)    An award of costs, including attorneys' fees and expenses in defending against the ownership claims asserted by the other Interpleader Defendants; and

(v)     such other relief as this Court deems just.

7

Dated:   March 7, 2025

THE GRIFFITH FIRM

*/s/ Edward Griffith*

By: _____

Edward Griffith
77 Sands Street
Brooklyn, New York 11201
(646) 645-3784 (mobile)
eg@thegriffithfirm.com

*Counsel for Interpleader Defendant Prince Paul Philippe of Romania on behalf of the Estate of King Carol II of Romania*

8

## VERIFICATION

I, Prince Paul Philippe of Romania, declare under penalty perjury under the laws of the

United States of America that the foregoing is true and correct.

Executed on:   March 7, 2025
              Paris, France

_____
        PAUL PHILIPPE OF ROMANIA