

Nixon Peabody LLP
Tower 46
55 West 46th Street
New York, NY 10036-4120

**Attorneys at Law**
nixonpeabody.com
@NixonPeabodyLLP

**Thaddeus J. Stauber**
Partner

T / 212.224.7351
F / 866.877.2293
tstauber@nixonpeabody.com

*Via ECF*

March 19, 2025

Hon. Louis L. Stanton
United States District Judge for
the Southern District of New York
United States Courthouse
500 Pearl Street, Courtroom 21C
New York, NY, 10007

  Re: *Paul Philippe of Romania, on behalf of Estate of King Carol II of Romania v. Christie's, Inc.*, 1:25-cv-1151-LLS

Dear Judge Stanton:

  We represent the State of Romania, a foreign sovereign that is immune to this Court's jurisdiction pursuant to 28 U.S.C. § 1604 *et seq.* Subject to and without waiving that immunity,[1] we write to advise the Court that it lacks jurisdiction and, in any event, the parties to this dispute are not diverse.

  As Your Honor has ruled: "Because of the limited jurisdiction of the federal courts […] it is incumbent upon this court to raise the question of subject matter jurisdiction sua sponte whenever it appears from the pleadings or otherwise that jurisdiction is lacking." *Aroch v. Yohai*, No. 16 CIV. 8954 (LLS), 2016 WL 6906711, at *1 (S.D.N.Y. Nov. 22, 2016) (quoting *John Birch Soc'y v. Nat'l Broad. Co.*, 377 F.2d 194, 199 (2d Cir. 1967)). Moreover, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

  Plaintiff sued Christie's, Inc., claiming ownership of a painting that had been consigned by an "unknown consignor" to Christie's for auction. The painting is titled *Saint Sebastian,* by Doménikos Theotokópoulos (called El Greco), oil on canvas, oval 35 ½ x 27 ¾ in. (90.2 x 70.5 cm.) (the "Painting"). Plaintiff is a foreign citizen (U.K. and Romania); the consignor, Accent Delight Int'l Ltd., is a foreign citizen (British Virgin Islands); and Romania is a foreign citizen (Romania). Each of these three parties claims ownership of the Painting and each is indispensable to Plaintiff's lawsuit. Rule 19. At the time-of-filing, Plaintiff knew that Romania claimed ownership of the Painting and that an "unknown" party had consigned the Painting to Christie's. (Complaint, ¶3 ("Christie's obtained possession of *Saint Sébastien* from an unknown consignor who instructed Christie's to sell the painting at auction") and ¶6 "When the Romanian government intervened and asserted an ownership claim, however, Christie's voluntarily withdrew the painting from auction.") A March 14, 2025 letter from the consignor's counsel confirms the consignor is "an overseas entity", *i.e.*, a foreign citizen. *See* Dkt. 27.

  For purposes of jurisdiction, diversity of citizenship is measured at the time the case is filed. *Grupo Dataflux v. Atlas Global Grp., L.P.,* 541 U.S. 567, 570–71 (2004) ("It has long been the case that 'the jurisdiction of the court depends upon the state of things at the time of the action brought.' [citation omitted] This time-of-filing rule is hornbook law (quite literally) taught to first-year law students in any basic course

---

[1] "Federal courts have been virtually unanimous in holding that the implied waiver provision of Section 1605(a)(1) must be construed narrowly." *Shapiro v. Republic of Bolivia*, 930 F.2d 1013, 1017 (2d Cir. 1991); *see also Drexel Burnham Lambert Grp., Inc. v. Comm. of Receivers for Galadari,* 12 F.3d 317, 327 (2d Cir.1993) (quoting with approval statement in *Frolova v. Union of Soviet Socialist Republics,* 761 F.2d 370, 378 (7th Cir.1985), that "waiver would not be found absent a *conscious decision* to take part in the litigation *and a failure to raise sovereign immunity* despite the opportunity to do so" (emphasis original)).

Honorable Louis J. Stanton
March 19, 2025
Page 2

Attorneys at Law
nixonpeabody.com
@NixonPeabodyLLP

on federal civil procedure.")  At the time-of-filing, there was no diversity between the foreign Plaintiff and the foreign indispensable claimants and this Court did not have subject matter jurisdiction—even if Christie's was a named defendant.

To determine if diversity jurisdiction existed at the time-of-filing, Rule 19 "sets forth a two-step test for determining whether the court must dismiss an action for failure to join an indispensable party." *Viacom Int'l., Inc. v. Kearney,* 212 F.3d 721, 724 (2d Cir.2000).  First, the court must determine if the absent party is "necessary" and, if so, whether the party is "indispensable." *Id*.  If the party is indispensable, but adding them to the case would destroy diversity, the case must be dismissed.  *Berkeley Acquisitions, LLC v. Mallow, Konstam & Hager, P.C.*, 262 F.R.D. 269, 273 (S.D.N.Y. 2009) (dismissing lawsuit because joinder of absent yet indispensable parties would destroy diversity).

Omitting Romania and the consignor as party-defendants created a mirage of diversity. Yet "Courts must sometimes look beyond the caption in conducting the diversity analysis. A necessary or indispensable party to a lawsuit, even where no specific cause of action is asserted against it, should be considered for diversity of jurisdiction purposes if it is a real party to the controversy." *Marathon CRE 2018-FL1 Issuer, Ltd. v. 257-263 W 34th St. LLC*, No. 22 CIV. 1991 (KPF), 2023 WL 1815195, at *6 (S.D.N.Y. Feb. 7, 2023) (cleaned up). Plaintiff's allegations make clear that indispensable parties were omitted from the lawsuit: "[B]ecause *Saint Sébastien* was stolen from Carol II in 1947, the Estate has superior title to the painting than either Christie's or the anonymous consignor." (Complaint, ¶57.)  And Plaintiff's counsel has since written this Court noting, again, that Romania asserted an ownership claim which caused Christie's to withdraw the Painting from the scheduled February 5, 2025, and that Accent Delight wants to sell the Painting.  See Dkt. 29.  The Plaintiff's lawsuit cannot proceed without Accent Delight or Romania; yet joining either as party-defendants would defeat diversity.[2]

Counsel for Christie's has argued that diversity jurisdiction exists *because* of the interpleader claim it filed. This argument ignores Plaintiff's failure to include non-diverse indispensable parties and, regardless, Christie's interpleader claim was filed *after* Plaintiff filed his lawsuit and cannot retroactively create subject matter jurisdiction. See e.g., *New York State Ass'n for Retarded Children v. Carey*, 438 F.Supp. 440, 445 n. 4 (E.D.N.Y.1977) ("If the court would have had no jurisdiction over the indispensable party at the commencement of the suit, the jurisdictional requirements cannot be avoided by adding him later in the proceeding.")  This Court has found that, in analogous settings, "[i]f the rule were otherwise, the requirement of complete diversity could be avoided by having one party bring an action while the indispensable party waits and then intervenes as of right under the court's ancillary jurisdiction. To avoid this collusive circumvention of jurisdictional requirements, a party who was indispensable to the action at the time it was brought is required to show that it could have invoked the court's jurisdiction from the beginning." *Mut. Fire, Marine & Inland Ins. Co. v. Adler*, 726 F. Supp. 478, 481 (S.D.N.Y. 1989).

The case Christie's cited to support its argument for jurisdiction, *Wei v. Sotheby's*, is inapposite. Although that case also involved an ownership dispute over artwork that had been consigned to a New York City auction house, *the plaintiff was the consignor*, and there was no argument that indispensable parties had been omitted or that joinder of such indispensable parties would divest the court of jurisdiction. *Wei Su v. Sotheby's, Inc.*, No. 17-CV-4577 (VEC), 2019 WL 4917609, at *1 (S.D.N.Y. Oct. 4, 2019). In fact, it does not appear that any party disputed jurisdiction; although, when discussing the appropriate choice-of-law test to apply, the court noted that jurisdiction rested on diversity and included a footnote about diversity jurisdiction in interpleader claims. Christie's defensive claim of interpleader does not change the jurisdictional analysis that must be measured at the time-of-filing and must account for the citizenship of *all* indispensable parties. *Berkeley Acquisitions*, *supra*, 262 F.R.D. at 273.

---

[2] In response to Plaintiff's letter, Christie's repeatedly acknowledged that Romania is a "necessary part[y]" to this dispute.  *See* Dkt. 32.

Honorable Louis J. Stanton
March 19, 2025
Page 3

Attorneys at Law
nixonpeabody.com
@NixonPeabodyLLP

      The lack of diversity necessary for this Court's jurisdiction was apparent to Romania, who already knew the consignor was a foreign citizen, but did not know of Plaintiff's lawsuit or ownership claim until the N.Y. Post published an article about the lawsuit on February 22, 2025. (Exhibit 1). Because of the obvious lack of diversity, Romania filed an action in state court (where diversity is not required) and joined all potential claimants in the same proceeding. Romania filed its lawsuit on February 26, 2025. Romania has since entered an agreement to dismiss Christie's, a disinterested custodial holder of the Painting, from the state court lawsuit.[3] [Exhibit 2.] Romania filed suit in state court because, in addition to the lack of diversity, it is immune from the jurisdiction of the courts of the U.S. as a foreign sovereign. *See* 28 U.S.C. § 1604 *et seq*. Romania has not waived that immunity,[4] and cannot be haled into this Court through Christie's' interpleader action. Thus, and because it is an indispensable party to Plaintiff's lawsuit, Romania's immunity from jurisdiction is an additional basis for the Court to dismiss. Rule 19(b) ("If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed.")

      Respectfully, this ownership dispute between foreign parties Paul Philippe, Romania, and the consignor should proceed in state court where subject matter jurisdiction is not in question. Pursuant to Your Honor's local rules, Romania will meet and confer with the other parties to determine whether an agreement can be reached to stay or dismiss this action and proceed with the pending state court action. As the letters of March 18, 2025 show, Romania has not been served (and may not be for months) and there is vocal opposition to holding a rule 26(f) conference and starting discovery before all parties have appeared (which may further delay proceedings in this Court). See Dkt. 29, 32-34. Thus, there would be no duplication of discovery efforts in the pending state court action, nor would there be a similar delay in seeking discovery in the state court action. If the parties will not agree to proceed in state court, Romania submits there is sufficient information for this Court to issue an order *sua sponte* dismissing or staying this federal court action. If the Court declines the opportunity to act *sua sponte*, Romania will discuss the issue of service with Christie's and, if necessary, file a motion to dismiss. To be clear, Romania does not waive its immunity as a foreign sovereign by taking any of these pre-answer steps towards resolution of the jurisdictional question. *Canadian Overseas Ores Ltd. v. Compania de Acero del Pacifico S.A.*, 727 F.2d 274, 277 (2d Cir. 1984) (moving to dismiss does not waive defense of sovereign immunity); *see also Cabiri*, *supra*, 165 F.3d at 201-202 (foreign state's filing of action in N.Y. state court was not a waiver of immunity under 28 U.S.C. § 1605(a)).

      We will advise the Court further after we have met and conferred with counsel for the other parties on this threshold issue.

Sincerely,

Thaddeus J. Stauber
Partner

TJS/hlg

cc:    Aaron M. Brian, Esq.
        All parties (via ECF)

---

[3] Christie's reaffirmed its lack of interest in a March 18, 2025 letter to this Court. See Dkt. 32.
[4] *Cabiri v. Gov't of Republic of Ghana*, 165 F.3d 193, 201 (2d Cir. 1999) (collecting cases).