**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

Yunseo CHUNG,

        *Plaintiff-Petitioner*,

v.

Donald J. TRUMP, in his official capacity as
President of the United States of America; Marco
RUBIO, in his official capacity as Secretary of
State, U.S. Department of State; Pamela BONDI,
in her official capacity as Attorney General, U.S.
Department of Justice; Kristi NOEM, in her
official capacity as Secretary of Homeland
Security, U.S. Department of Homeland Security;
Todd M. LYONS, in his official capacity as
Acting Director, U.S. Immigration and Customs
Enforcement; and William P. JOYCE, in his
official capacity as Acting Field Office Director of
the New York Immigration and Customs
Enforcement Office,

        *Defendants-Respondents*.

Case No. 25-cv-2412

**MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS-RESPONDENTS' MOTION TO DISMISS**

CLEAR Project - Main Street Legal Services, Inc.
Emery Celli Brinckerhoff Abady Ward & Maazel LLP
Human Rights First
Lawyers' Committee for Civil Rights of the San Francisco Bay Area
Law Office of Matthew Bray
Jonathan Hafetz, Esq.

<u>TABLE OF CONTENTS</u>

<u>PAGE NO.</u>

PRELIMINARY STATEMENT ....................................................................................1

BACKGROUND ........................................................................................................1

ARGUMENT ............................................................................................................2

    I.     THERE ARE NO JURISDICTIONAL BARS TO MS. CHUNG'S CLAIMS ......2

         A.    Section 1252(g) Does Not Bar Ms. Chung's Claims ...................................2

             1.    Ms. Chung does not challenge the commencement
                 of removal proceedings. ..................................................................3

             2.    Alternatively, Ms. Chung challenges only
                 Defendants' legal authority, not any discretionary decision. ...........6

             3.    Applying 1252(g) to Ms. Chung's claims would raise
                 significant constitutional concerns this Court must avoid. .............8

         B.    Neither Section 1252(b)(9) nor (a)(5) Bars Ms. Chung's Claims .............11

             1.    Section 1252(b)(9) channels only those issues adjudicated
                 by the IJ or BIA that affect the validity of the final
                 order of removal. ..........................................................................13

             2.    If 1252(b)(9) channels Ms. Chung's claims, they will
                 never receive review, the "extreme" result that
                 *Jennings* cautions against. ...............................................................15

                    a.    Review is unavailable in either immigration
                       court or before the Board of Immigration Appeals. ...........15

                    b.    Ms. Chung's constitutional claims cannot be
                       reviewed in a petition for review by the
                       Second Circuit. ................................................................18

    II.    MS. CHUNG'S CLAIMS ARE NOT OTHERWISE DEFECTIVE ....................20

         A.    Ms. Chung Is in Custody for Purposes of Habeas Relief
             Because Her Liberty Is Substantially Curtailed ........................................20

          B.    The Political Question Doctrine Is Inapplicable .......................................23

CONCLUSION .........................................................................................................26

TABLE OF AUTHORITIES

**Cases**

*Aguilar v. U.S. ICE,*
    510 F.3d 1 (1st Cir. 2007) .................................................................. 19, 20, 23

*Alcaraz v. Immigr. and Naturalization Serv.,*
    384 F.3d 1150 (9th Cir. 2004) ......................................................................... 8

*Ali v. Mukasey,*
    524 F.3d 145 (2d Cir. 2008) ......................................................................... 5, 6

*Almeida-Amaral v. Gonzales,*
    461 F.3d 231 (2d Cir. 2006) ........................................................................... 22

*Arce v. U.S.,*
    899 F.3d 796 (9th Cir. 2018) ........................................................................ 10

*Baker v. Carr,*
    369 U.S. 186 (1962) ................................................................................. 32, 33

*Bhaktibhai-Patel v. Garland,*
    32 F. 4th 180 (2d Cir. 2022) ............................................................. 18, 20, 27

*Biden v. Texas,*
    597 U.S. 785 (2022) ...................................................................................... 35

*Boumediene v. Bush,*
    553 U.S. 723 (2008) ...................................................................................... 14

*Calderon v. Sessions,*
    330 F. Supp. 3d 944 (S.D.N.Y. 2018) ............................................................ 9

*Catholic Soc. Servs., Inc. v. Immigr. and Naturalization Serv.,*
    232 F.3d 1139 (9th Cir. 2000) ....................................................................... 5

*Colo. River Water Conservation Dist. v. United States,*
    424 U.S. 800 (1976) ...................................................................................... 33

*Delgado v. Quarantillo,*
    643 F.3d 52 (2d Cir. 2011) ............................................................................ 20

*Dep't of Homeland Sec. v. Regents of the Univ. of California,*
    591 U.S. 1 (2020) ............................................................................... 5, 17, 35

*Dep't of State v. Muñoz,*
    602 U.S. 899 (2024) ...................................................................................... 23

*Diaz v. Paterson*,
    547 F.3d 88 (2d Cir. 2008) ............................................................................ 25

*Diaz-Bernal v. Myers*,
    758 F. Supp. 2d 106 (D. Conn. 2010) ..................................................... 17, 24

*E.O.H.C. v. Sec'y U.S. Dep't of Homeland Sec.*,
    950 F.3d 177 (3d Cir. 2020) ........................................................... 16, 17, 25

*Fla. Power & Light Co. v. Lorion*,
    470 U.S. 729 (1985) ...................................................................................... 25

*Garcia v. Att'y Gen.*,
    553 F.3d 724 (3d Cir. 2009) ......................................................................... 10

*Gonzales-Roque*,
    301 F.3d at 47 .............................................................................................. 22

*Hensley v. Mun. Ct., San Jose Milpitas Jud. Dist.*,
    411 U.S. 345 (1973) ............................................................... 28, 29, 30, 31

*Immigr. and Naturalization Serv. v. Chadha*,
    462 U.S. 919 (1983) ................................................................................ 18, 33

*In re Ruiz-Massieu*,
    22 I&N Dec. 833 (BIA 1999) ............................................................ 21, 23, 24

*J.E.F.M. v. Lynch*,
    837 F.3d 1026 (9th Cir. 2016) ...................................................................... 19

*Jafarzadeh v. Duke*,
    270 F. Supp. 3d 296 (D.D.C. 2017) ............................................................. 24

*Jennings v. Rodriguez*,
    583 U.S. 281 (2018) .............................................................................. passim

*Kadic v. Karadzic*,
    70 F.3d 232 (2d Cir. 1995) ........................................................................... 34

*Khalil v. Trump*, et al.,
    No. 2:25-cv-1963 (April 11, 2025) ..................................................... 2, 13, 26

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in*
    *Amministrazione Straordinaria*,
    937 F.2d 44 (2d Cir. 1991) ........................................................................... 33

*Kong v. United States*,
    62 F.4th 608 (1st Cir. 2023) ..................................................................... 9, 14

*Lennon v. Immigr. and Naturalization Serv.*,
    527 F.2d 187 (2d Cir. 1975)................................................................................ 26

*Lopez v. Doe*,
    681 F. Supp. 3d 472 (E.D. Va. 2023) ............................................................... 15

*M.Q. v. United States*,
    No. 1:22-CV-10680 (ALC) (KHP), 2025 WL 965810 (S.D.N.Y. Mar. 31, 2025).......... 11

*Madu v. Att'y Gen.*,
    470 F.3d 1362 (11th Cir. 2006) ........................................................................ 10

*Mahdawi v. Trump*,
    No. 25-cv-389 (D. Vt. Apr. 24, 2025) ................................................... 2, 3, 31

*Marbury v. Madison*,
    5 U.S. 137 (1803).............................................................................................. 35

*Martinez v. Napolitano*,
    704 3d. 620 (9th Cir. 2012)............................................................................... 19

*Massieu v. Reno*,
    91 F. 3d 416 (3d Cir. 1996)......................................................................... 27, 28

*Matter of C-*,
    20 I. & N. Dec. 529 (BIA 1992) ...................................................................... 21

*Matter of G-K-*,
    26 I. & N. Dec. 88 (BIA 2013) ........................................................................ 21

*Matter of H-*,
    3 I. & N. Dec. 411 (BIA 1949) ........................................................................ 22

*Matter of Khalik*,
    17 I & N Dec. 518 (BIA 1980) ........................................................................ 24

*Matter of Ramos*,
    15 I. & N. Dec. 671 (BIA 1976) ...................................................................... 22

*Matter of Valdovinos*,
    18 I. & N. Dec. 343 (BIA 1982) ...................................................................... 21

*Morrison v. Nat'l Australia Bank Ltd.*,
    561 U.S. 247 (2010).......................................................................................... 32

*Myers & Myers, Inc. v. U.S. Postal Serv.*,
    527 F.2d 1252 (2d Cir. 1975)...................................................................... 10, 11

*Nasrallah v. Barr*,
    590 U.S. 573 (2020)............................................................................................. 18

*NWDC Resistance v. Immigr. & Customs Enf't*,
    493 F. Supp. 3d 1003 (W.D. Wash. 2020)............................................. 7, 16, 19

*Orozco-Velasquez v. Att'y Gen.*,
    817 F.3d 78 (3d Cir. 2016).................................................................................... 8

*Osorio-Martinez v. Att'y Gen.*,
    893 F.3d 153 (3d Cir. 2018)........................................................................ 14, 15

*Ozturk v. Hyde*,
    25-1019 (2d Cir. Apr. 24, 2025) ......................................................................... 2

*Ozturk v. Trump*,
    No. 2:25-cv-374, 2025 WL 1145250 (D. Vt. Apr. 18, 2025) ...................... 2, 31

*Pham v. Ragbir*,
    141 S. Ct. 227 L. Ed. 2d 1 (2020) ...................................................................... 9

*Planned Parenthood Fed'n of Am., Inc. v. Agency for Int'l Dev.*,
    838 F.2d 649 (2d Cir. 1988)......................................................................... 33, 34

*Preiser v. Rodriguez*,
    411 U.S. 475 (1973)............................................................................................ 29

*Radwan v. Manuel*,
    55 F.4th 101 (2d Cir. 2022) ............................................................................... 25

*Ragbir v. Homan*,
    923 F.3d 53 (2d Cir. 2019)........................................................................ passim

*Ragbir v. United States*,
    No. 17-1256, 2018 WL 1446407 (D.N.J. Mar. 23, 2018) ................................. 6

*Regents of the Univ. of California v. U.S. Dep't of Homeland Sec.*,
    908 F.3d 476 (9th Cir. 2018) .............................................................................. 8

*Reno v. Am.-Arab Discrimination Comm. ("AADC")*,
    525 U.S. 471 (1999)............................................................................................. 4

*S.N.C. v. Sessions*,
    No. 18-cv-7680, 2018 WL 6175902 (S.D.N.Y. Nov. 26, 2018)...................... 10

*Suri v. Trump et al.*,
    No. 1:25-cv-00480 (E.D. Va. Apr. 1, 2025) ...................................................... 2

*Taylor v. McDermott*,
    516 F. Supp. 3d 94 (D. Mass. 2021) ................................................. 14

*Torres–Tristan v. Holder*,
    656 F.3d 653 (7th Cir. 2011) ................................................. 19, 27

*United States v. Gonzales-Roque*,
    301 F.3d 39 (2d Cir. 2002) ................................................. 21

*You v. Nielsen*,
    321 F. Supp. 3d 451 (S.D.N.Y. 2018) ................................................. 9

*Zadvydas v. Davis*,
    533 U.S. 678 (2001) ................................................. 13

*Zivotofsky v. Clinton*,
    566 U.S. 189 (2012) ................................................. 33, 35

## Statutes

28 U.S.C. § 2241 ................................................. 23, 26

6 U.S.C. § 202(3) ................................................. 5

8 C.F.R. § 1003.19(h)(2)(i)(C) ................................................. 11

8 C.F.R. §§ 1240.1(a) ................................................. 18

8 U.S.C. § 1227(a)(4)(C) ................................................. 19

8 U.S.C. § 1252(a)(5) ................................................. 3, 13, 14, 15

8 U.S.C. § 1252(b)(9) ................................................. passim

8 U.S.C. § 1252(g) ................................................. passim

## Other Authorities

Administrative Procedures Act ................................................. 9

H.R. Rep. No. 109-72 ................................................. 14

Oliver Laughland, *US judge rules Mahmoud Khalil can be deported for his views*,
    THE GUARDIAN (Apr. 11, 2025), *available at* https://www.theguardian.com/us-
    news/2025/apr/11/mahmoud-khalil-deportation-ruling-immigration. ................................................. 21

## Constitutional Provisions

Fifth Amendment ................................................. 9

First Amendment ................................................................................................................. passim

## PRELIMINARY STATEMENT

In their memorandum in support of their motion to dismiss, ECF 33 ("Mem."), Defendants-Respondents ("Defendants") do not contest the key facts that decide this motion: (1) there is a government policy to retaliate against noncitizens for their constitutionally protected advocacy with the explicit purpose to chill and punish disfavored viewpoints (the "Policy"); and (2) the application of the Policy to Ms. Chung led to the Rubio Determination, which found that Ms. Chung's presence or activities in the United States would have potentially serious adverse foreign policy consequences for the United States or would compromise a compelling U.S. foreign policy interest based only on Ms. Chung's protected First Amendment activity. Instead, Defendants misconstrue Ms. Chung's claims to argue that the INA forbids this Court from hearing them. In so doing, Defendants ignore key language in the INA; expansively read statutes the Supreme Court and Second Circuit have repeatedly construed narrowly; and advocate a nonsensical and unjust approach to judicial review that cannot be squared with the INA nor binding precedent.

## BACKGROUND

In March 2025, Secretary of State Rubio began implementing the Policy, targeting Ms. Chung and others for their lawful "past, current, or expected beliefs, statements, or associations," and specifically for their association with Palestinian human rights advocacy. *See* Ex. A to ECF 34 ("Vides Decl.").[1] In each case, regardless of procedural posture or ground of removability, Defendants have endeavored to evade any judicial review of the Policy, its application to particular individuals (including permanent residents) for political speech, or the unconstitutional detention

---

[1] The Rubio Determination was based on Ms. Chung's participation in protests, and also Ms. Chung's citation during a protest on March 5, 2025. The government has clarified that it was based on her participation in the March 5, 2025 protest, *see* ECF 34 at 2 ¶¶ 3–6; Mem. at 9, which criticized Columbia University's handling of student disciplinary proceedings. *See* ECF 1 at ¶ 4. All charges against her have been dismissed. *See* Levitova Decl., Ex. A. Any claim of unlawful conduct claim is thus baseless. Additionally, as of the date of this filing, Ms. Chung is in good standing at Columbia University. *See id.*, ¶ 3.

to which those individuals are subject. *See* ECF 1 at ¶¶ 99–140 (describing targeting of others). They have continued to argue that detained students such as Mr. Khalil,[2] a permanent resident like Ms. Chung, and Dr. Suri,[3] cannot challenge their unconstitutional detention, raising similar arguments to those here. Since this action was filed, Defendants have also apprehended other students, such as Rümeysa Öztürk, who was likewise spirited thousands of miles from her home, across multiple state lines to Louisiana, *Ozturk v. Trump*, No. 2:25-cv-374, 2025 WL 1145250, at *2–4 (D. Vt. Apr. 18, 2025), and permanent resident Mohsen Mahdawi, whose transfer to Louisiana was prevented only by a court order. Order at 1, *Mahdawi v. Trump*, No. 25-cv-389 (D. Vt. Apr. 24, 2025), ECF 34. In both cases, the government has fought vociferously to prevent judicial review of targeting or detention, raising the same jurisdictional bars as here (among others). *See* Emergency Mot., *Ozturk v. Hyde*, 25-1019 (2d Cir. Apr. 24, 2025), ECF 19.1; Pre-Hearing Submission, *Mahdawi v. Trump*, No. 25-cv-389 (D. Vt. Apr. 22, 2025), ECF 25.

## ARGUMENT

Defendants invoke a series of jurisdictional obstacles, but all depend on misconstruing Ms. Chung's claims while ignoring clear statutory text and settled authority establishing her claims are reviewable. Nor do other defects bar Ms. Chung's claims.

## I.    THERE ARE NO JURISDICTIONAL BARS TO MS. CHUNG'S CLAIMS.

### A.    Section 1252(g) Does Not Bar Ms. Chung's Claims

Defendants invoke 8 U.S.C. § 1252(g) to argue this Court lacks jurisdiction to hear *any* of Ms. Chung's claims, suggesting that each is at bottom a challenge to the routine discretionary

---

[2] Petition for Permission to Appeal under 28 U.S.C. Section 1292(b), *Khalil v. Joyce*, No. 25-08019 (3d Cir. Apr. 14, 2025), ECF 1 (seeking interlocutory appeal of order keeping habeas jurisdiction in District of New Jersey).

[3] *See* Memorandum of Law in Support of Motion to Dismiss or Transfer, *Suri v. Trump et al.*, No. 1:25-cv-00480 (E.D. Va. Apr. 1, 2025), ECF 26.

decision to commence removal proceedings. ECF 33 at 6–11. This misconstrues the nature of the relief she seeks and the procedural context in which her claims arise.

Ms. Chung's claims revolve around (1) the Policy to retaliate against noncitizens for their constitutionally protected advocacy; (2) the application of the Policy to her, which led to the Rubio Determination, subjecting her to, *inter alia*, the threat of arrest and detention; and (3) Defendants' overt efforts to retaliate against Ms. Chung for her speech by seeking her arrest, detention, and transfer. None of these claims challenges the three discrete actions listed under 1252(g).

### 1. Ms. Chung does not challenge the commencement of removal proceedings.

Section 1252(g) does not apply to Ms. Chung's claims because she does not challenge any discretionary "decision or action by the Attorney General to *commence* proceedings, *adjudicate* cases, or *execute* removal orders[.]" 8 U.S.C. § 1252(g) (emphasis added).[4] This narrow provision is tethered solely to the Attorney General's decisions with respect to these "three discrete actions[.]" *Reno v. Am.-Arab Discrimination Comm. ("AADC"),* 525 U.S. 471, 482 (1999*)*. It does not alter a court's jurisdiction to review the "many other decisions or actions that may be part of the deportation process—such as the decisions to open an investigation[.]" *Id*. at 483.

For reasons also stated in Ms. Chung's simultaneously filed reply in further support of her preliminary injunction motion, 1252(g) is inapplicable to the decision to detain.

Defendants' argument that 1252(g) bars review of Ms. Chung's challenges to the Policy and the Rubio Determination is foreclosed by the statutory text. Their attempt to stretch that text to reach circumstances to which it has never been applied is utterly without support in precedent or logic. First, neither the Rubio Determination nor the underlying Policy constitutes an "action by

---

[4] This authority has been re-delegated, and is now exclusively exercised by, the Secretary of Homeland Security. 6 U.S.C. § 202(3), such that 1252(g)'s reference to "Attorney General" now denotes the DHS Secretary.

the [DHS Secretary] to commence proceedings[.]" 8 U.S.C. 1252(g). Dispositively, the Rubio Determination was not an action taken by the DHS Secretary at all, as the text expressly requires, but rather by the Secretary of State, who has no authority whatsoever to "commence proceedings[.]" The authority to commence proceedings is exclusively vested with the DHS Secretary. *See Ali v. Mukasey*, 524 F.3d 145, 150 (2d Cir. 2008) ("The Homeland Security Act … transferred authority to commence removal proceedings … to the Secretary of DHS."). Indeed, Defendants concede that neither the Policy nor the Rubio Determination itself "commence[s] proceedings." *See* ECF 33 ("ICE has been unable to … commenc[e] removal proceedings."). The Court need go no further: this alone is sufficient to make 1252(g) inapplicable.

Separately, the Supreme Court has squarely rejected Defendants' position that 1252(g) sweeps in actions such as implementation of the Policy and the Rubio Determination, which are arguably connected to, but distinct from, the actions listed in the statute. In *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1 (2020), mirroring their position here, Defendants argued that the rescission of DACA constituted "an initial 'action' in DHS's 'commence[ment] of proceedings' within the meaning of Section 1252(g)." Brief of Petitioners at 21, 18-587 (Aug. 19, 2019), ECF 1. The Court rejected this position without so much as discussing it, emphasizing that 1252(g) is "narrow," *Regents*, 591 U.S. at 19, consistent with longstanding authority that 1252(g) "refer[s] to just those three specific actions themselves." *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018); *see also Catholic Soc. Servs., Inc. v. Immigr. and Naturalization Serv.*, 232 F.3d 1139 (9th Cir. 2000) (en banc) (finding 1252(g) did not bar review of plaintiffs' challenge to policy that led to denial of applications for legalization, even though denial of legalization applications could lead to decision to commence removal proceedings). As Defendants acknowledge, the Rubio Determination necessarily precedes and is distinct from any

4

decision to commence proceedings: DHS must separately decide whether to commence proceedings and may well decide not to do so. Defendants do not argue—nor could they—that DHS is required by statute or otherwise to commence proceedings because of the Rubio Determination, nor that the Rubio Determination itself commences proceedings. *See* Mem. 10. Thus, 1252(g) poses no obstacle to Ms. Chung's challenge to a determination made by the Secretary of State (and the Policy on which that determination was based).

Courts have uniformly found that where, as here, a claim challenges decisions upstream of the discretionary decision to commence proceedings, 1252(g) poses no obstacle. *See, e.g.*, *Ali*, 524 F.3d at 150 (reviewing denial of request to withdraw asylum application, notwithstanding that resulting adjudication of meritless asylum application directly led to decision to commence proceedings); *Ragbir v. United States,* No. 17-1256, 2018 WL 1446407, at *9 (D.N.J. Mar. 23, 2018) (holding 1252(g) does not bar challenge to legal decision that put Ragbir "within th[e] class of removable aliens" against whom proceedings could be started, because it is "upstream" of discretionary decision to commence proceedings). Nor does it bar challenges to upstream policy decisions to target for deportation certain classes of persons, as here. *See NWDC Resistance v. Immigr. & Customs Enf't*, 493 F. Supp. 3d 1003, 1011 (W.D. Wash. 2020) (holding 1252(g) does not bar review of "challenge [to] the constitutionality of ICE's 'policy choice' to target outspoken [noncitizens]" because it does not challenge provision's "three discrete actions"). Ms. Chung's challenges to the Policy and Rubio Determination are no different than these challenges to other upstream actions that lead, or render someone amenable, to removal proceedings, and are likewise reviewable. Defendants point to no case—and there is none—in which 1252(g) was applied to bar review of the actions of a *different* executive branch agency that precede the commencement of

removal proceedings. Extending 1252(g) to these circumstances would defy both precedent and statutory text.

Insofar as Ms. Chung's claims challenge DHS actions (apart from State Department actions), they challenge conduct akin to opening an investigation in contemplation of removal proceedings. In *AADC*, the Supreme Court expressly found ancillary decisions "such as the decisions to open an investigation" were not subject to the 1252(g) bar. *AADC*, 525 U.S. at 482. Other courts have similarly found that claims closely related to the initiation of removal proceedings, including against policies that render noncitizens removable or lead to the later decision to commence proceedings, are not precluded by 1252(g). *See, e.g.*, *Orozco-Velasquez v. Att'y Gen.*, 817 F.3d 78 (3d Cir. 2016) (rejecting application of 1252(g) to claims concerning deficient Notice to Appear); *Regents of the Univ. of California v. U.S. Dep't of Homeland Sec.*, 908 F.3d 476, 504 (9th Cir. 2018) (permitting challenge to DACA rescission policy even though it could be conceptualized "as an ingredient in a subsequent decision to commence proceedings against particular individuals"), *aff'd in relevant part sub nom. Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1 (2020); *Alcaraz v. Immigr. and Naturalization Serv.*, 384 F.3d 1150 (9th Cir. 2004). Under this settled authority, where, as here, Ms. Chung's claims do not directly challenge the decision to commence proceedings itself, the claims are not barred by 1252(g).

### 2. Alternatively, Ms. Chung challenges only Defendants' legal authority, not any discretionary decision.

If, contrary to the dispositive authority above, the Court finds Ms. Chung's claims challenge the commencement of proceedings, they would still not be barred under 1252(g). That is because she does not challenge the selective enforcement of an otherwise valid charge of removability, but rather Defendants' very authority to target her based on protected speech under

a fatally vague policy of "champion[ing] core American interests and American citizens," *Vides Decl. Ex. A.*[5] *See, e.g.*, *Kong v. United States*, 62 F.4th 608, 618 (1st Cir. 2023) (preserving judicial review where claim "does not arise from [a] discretionary decision" but instead "arises from the government's alleged violations of law . . . and in failing to abide by its own regulations") (internal citations omitted); *Calderon v. Sessions*, 330 F. Supp. 3d 944, 954 (S.D.N.Y. 2018) (exercising jurisdiction because "Petitioner here does not challenge ICE's prosecutorial discretion [but] [r]ather, Petitioner challenges ICE's *legal authority* to exercise such discretion when the subject of the removal order also has a right to seek relief made available by the DHS") (emphasis in original); *You v. Nielsen*, 321 F. Supp. 3d 451, 457 (S.D.N.Y. 2018) (distinguishing discretionary decision from whether DHS conduct "accords with the Constitution and the laws of this country"); *S.N.C. v. Sessions*, No. 18-cv-7680, 2018 WL 6175902, at *6 (S.D.N.Y. Nov. 26, 2018) (similar); *see also, e.g.*, *Madu v. Att'y Gen.*, 470 F.3d 1362, 1368 (11th Cir. 2006) (explaining that 1252(g) "does not proscribe substantive review of the underlying legal bases for those discretionary decisions and actions"); *Arce v. U.S.*, 899 F.3d 796, 801 (9th Cir. 2018) (similar); *Garcia v. Att'y Gen.*, 553 F.3d 724, 729 (3d Cir. 2009) (same).

Ms. Chung squarely challenges the extent of Defendants' authority to target noncitizens consistent with the First Amendment, the Fifth Amendment, and the Administrative Procedures Act ("APA"). Defendants cannot cloak unconstitutional or unlawful conduct under the guise of

---

[5] *Ragbir v. Homan* is not to the contrary. 923 F.3d 53, 64 (2d Cir. 2019), *cert. granted, judgment vacated sub nom. Pham v. Ragbir*, 141 S. Ct. 227, 208 L. Ed. 2d 1 (2020). In *Ragbir*, the Second Circuit considered whether a petitioner who was subject to a valid removal order based on an aggravated felony could challenge one of the three discrete 1252(g) actions—DHS enforcement of the order—"through mere styling of [his] claims," because the government's discretionary decision about when to enforce the order was predicated on "unlawful considerations." The Second Circuit, consistent with *AADC*, found that this type of selective enforcement claim, where "the Government unquestionably had statutory authority," falls under 1252(g). Here, Ms. Chung's challenge is to the unconstitutional authority given by the Foreign Policy Ground, *see* ECF 1, ¶¶ 92-96 (discussing history of the "Foreign Policy Ground"), and implemented via a viewpoint-discriminatory policy. And, unlike *Ragbir*, Ms. Chung would be amenable removal proceedings only because of Defendants' unconstitutional conduct.

"discretion" and thereby evade judicial review. *Cf. Myers & Myers, Inc. v. U.S. Postal Serv.*, 527 F.2d 1252, 1261 (2d Cir. 1975) ("[A] federal official cannot have discretion to behave unconstitutionally[.]"); *see also M.Q. v. United States*, No. 1:22-CV-10680 (ALC) (KHP), 2025 WL 965810, at \*6 (S.D.N.Y. Mar. 31, 2025) (applying *Myers* to challenge to legality of ICE detention).

### 3.    Applying 1252(g) to Ms. Chung's claims would raise significant constitutional concerns this Court must avoid.

First, even if 1252(g) were applied here, Ms. Chung's claims would fall under the Supreme Court's exception for "outrageous" conduct to avoid constitutional concerns. *AADC*, 525 U.S. at 491. The Supreme Court found claims of selective enforcement did not offend the First Amendment where plaintiffs' "continuing presence in this country [was] in violation of the immigration laws," but did not "rule out the possibility of a rare case in which the alleged basis of discrimination is so outrageous that the foregoing considerations can be overcome." *Id.* Applying the principle of *AADC*,[6] the Second Circuit found the exception was met under a First Amendment retaliation claim where the "speech implicate[d] the highest protection of the First Amendment," there was "plausible—indeed, strong—evidence" that the government retaliated "based on [its] disfavor of [petitioner's] speech (and its prominence)," and the petitioner had a "substantial interest in avoiding deportation under these circumstances, and the Government's interests in avoiding any inquiry into its conduct [were] less pronounced than in *AADC*." *Ragbir*, 923 F.3d at 73. Ms. Chung's claims compel a similar conclusion for reasons even stronger than those in *Ragbir*: Ms. Chung has not violated any immigration or criminal laws, she is a Lawful Permanent

---

[6] In evaluating whether government conduct falls within this exception, "*AADC* compels courts to evaluate the gravity of the constitutional right affected; the extent to which the plaintiff's conduct or status that forms the basis for the alleged discrimination is actually protected; the egregiousness of the Government's alleged conduct; and the plaintiff's interest in avoiding selective treatment, as balanced against the Government's discretionary prerogative." *Ragbir*, 923 F.3d at 69.

Resident with a compelling interest in avoiding unlawful detention, and without resorting to any pretext, Defendants are openly retaliating against her for protected expression.[7] Moreover, Defendants have taken the apparent position that Ms. Chung's protest of Columbia University disciplinary policies—the subject of the March 5, 2025 protest on the basis of which she was targeted, *see supra* at footnote 1—compromises a compelling foreign policy interest, an assertion of power so broad that no limits on the scope of speech to which it might be applied are readily discernible.

As the Second Circuit held in *Ragbir*, "[t]o allow this retaliatory conduct to proceed would broadly chill protected speech, among not only activists subject to . . . deportation but also those citizens and other residents who would fear retaliation against others." 923 F.3d at 71. Defendants' outrageous conduct is only underscored by their further admission that, should they be successful in their quest to avoid this Court's review of Ms. Chung's claims, they would then seek to subject Ms. Chung to indefinite detention with no opportunity to seek release on bond before an immigration judge. *See* Levitova Decl., Ex. B (Mar. 25, 2025 Hr'g Tr.) at 4:4-6, 6:21-7:1 (Mr. Oestericher: "[M]y colleague . . . is . . . not certain there is a bond hearing available if she was detained."); *see also* Letter at 1-2, *Khalil v. Trump*, et al., No. 2:25-cv-1963 (April 11, 2025), ECF 190 (conceding that an immigration judge could not "review a custody determination and set appropriate bond" based on same charge of removability) (citing 8 C.F.R. § 1003.19(h)(2)(i)(C)).

---

[7] *See* Vides Decl., Ex. A (noting that Secretary Rubio personally determined that Ms. Chung's presence or activities in the United States "would compromise a compelling foreign policy interest" because of her *lawful*, "past, current, or expected beliefs, statements, or associations"). Adding to the outrageousness, Defendant Rubio recently confirmed the coercive purpose of detaining noncitizen students in Ms. Chung's position, stating that "if [the students] seek to self-deport they can do that, because that's what we've done. We're basically asking them to leave the country. That's why they've been detained." Secretary of State Marco Rubio Remarks to the Press En Route to Miami, Florida, Mar. 28, 2025, available at https://perma.cc/JUU8-GDQK. That the express purpose is to scare others adds to the outrageousness. *See Ragbir*, 923 F.3d at 72 (citing effect of "broadly chill[ing] protected speech, among not only activists subject to final orders of deportation but also those citizens and other residents who would fear retaliation against others").

In sum, ICE's unprecedented targeting of a student activist for detention and deportation based on campus speech is so patently outrageous that, pursuant to the exception recognized in *AADC* and applied in *Ragbir*, 1252(g) cannot be read to withdraw jurisdiction to review her claims.[8]

Second, Ms. Chung's claims are also squarely protected under the Suspension Clause.[9] Defendants suggest that 1252(g) divests this Court's jurisdiction to review the legality of their retaliation against Ms. Chung for her protected First Amendment activity but the Second Circuit has already expressly rejected that argument. *See Ragbir*, 923 F.3d at 78 (finding that "constitutionally required scope of the privilege of the writ of habeas corpus encompasses [petitioner's] claim" and that "because Congress has provided no 'adequate substitute' and because there has been no formal suspension of the writ, [petitioner] is entitled to a habeas corpus proceeding as to the basis for the Government's impending action to deport him"); *see also Kong*, 62 F.4th at 616 (finding that "the effective result of the government's desired interpretation" of 1252(g) was "to bar all detention-related claims" which "would raise serious constitutional concerns under the Suspension Clause" because "[a]bsent the right to judicial review through a habeas petition, the government could detain noncitizens indefinitely without needing to provide a justification to anyone"); *Osorio-Martinez v. Att'y Gen.*, 893 F.3d 153, 167 (3d Cir. 2018) (invoking Suspension Clause to protect writ).

Defendants argue this Court cannot consider Ms. Chung's claims because, "after exhausting administrative remedies in the immigration court and at the BIA, she may file a petition

---

[8] If the Court needs to reach the outrageousness exception but does not find the exception met on the existing record, resolution of the issue should be held in abeyance pending discovery. *See* ECF 30 (seeking discovery relevant to outrageousness exception).

[9] Ms. Chung also enjoys due process rights by virtue of being a lawful permanent resident. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[O]nce an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.").

for review of a final removal order with the appropriate court of appeals." Mem. at 5. But the "adequacy of this 'meaningful opportunity' to demonstrate that one's detention is unlawful depends on 'the rigor of any earlier proceedings.'" *Taylor v. McDermott*, 516 F. Supp. 3d 94, 110 (D. Mass. 2021) (quoting *Boumediene v. Bush*, 553 U.S. 723, 782-83 (2008)). Here, the Policy, the Rubio Determination, and Defendants' attempts to detain Ms. Chung are devoid of any rigor or due process, and Ms. Chung does not have adequate alternatives to this Court's review under the Great Writ. *See infra* Section B.2; *see also Osorio-Martinez*, 893 F.3d at 167 (holding "INA's jurisdiction-stripping provisions effect an unconstitutional suspension of the writ" when challenged removal regime did not provide adequate substitute process). Defendants' effort to subject Ms. Chung to mandatory detention pending the outcome of her removal proceedings underscores the dire need here for habeas review. *See Lopez v. Doe*, 681 F. Supp. 3d 472, 488 (E.D. Va. 2023) (holding that "the appeals process following the immigration court's resolution of [a] motion to reopen is neither 'adequate' nor 'effective'" because while it "would eventually resolve his claim, … his detention claim becomes moot on finality").

## B.    Neither Section 1252(b)(9) nor (a)(5) Bars Ms. Chung's Claims

Defendants' argument that 1252(b)(9) and (a)(5) strip this Court of jurisdiction over Ms. Chung's claims misconstrues those claims and advances an extreme interpretation squarely foreclosed by Supreme Court precedent. Section 1252(a)(5) channels judicial review of a removal order to the petition for review ("PFR") process, but there is no such order here. Section 1252(b)(9) restricts judicial review of factual and legal issues "arising from any action taken or proceeding brought to remove an alien" to the judicial review available from final orders of removal, but as shown below Ms. Chung's claims do not arise from removal proceedings. In stark contrast to Defendants' sweeping and mistaken claim that Ms. Chung presents an undifferentiated "challenge to removal proceedings," Mem. 7, she in fact challenges (*i*) an unconstitutional Policy targeting

11

her and others for protected speech; (*ii*) the baseless Rubio Determination made by a different agency that plays no role in removal proceedings; and (*iii*) other enforcement actions arising from a retaliatory investigation.[10] In a very similar circumstance, a district court rejected the government's argument that (b)(9) and (a)(5) would channel review over claims of a selective enforcement policy targeting noncitizen activists. *See NWDC Resistance*, 493 F. Supp. 3d at 1012–13.

Defendants' argument that these claims are all reducible to a "challenge to removal proceedings" distorts both the claims and settled authority confirming the narrow scope of 1252(b)(9). As shown below, Defendants advance precisely the type of expansive interpretation foreclosed by binding precedent. Where, as here, a claim cannot be meaningfully reviewed through a PFR, applying 1252(b)(9) to bar that claim would transform a *channeling* provision into a *jurisdiction-stripping* provision, defying the statutory structure. *E.O.H.C. v. Sec'y U.S. Dep't of Homeland Sec.*, 950 F.3d 177, 186 (3d Cir. 2020) ("[T]he point of the provision is to channel claims into a single petition for review, not to bar claims that do not fit within that process."). The channeling-vs-stripping distinction is compelled by the Supreme Court's narrow interpretation of what claims "arise from" proceedings: it has dismissed as "extreme" and "absurd" broader readings, such as Defendants' here, that would render valid claims "effectively unreviewable." *Jennings*, 583 U.S. at 293. This distinction reflects that "[i]n enacting § 1252(b)(9), Congress was motivated by concern" over duplicative review, "fear[ing] identical issues would be litigated before the immigration judge, district court, and court of appeals." *Diaz-Bernal v. Myers*, 758 F. Supp. 2d 106, 122 (D. Conn. 2010) (quoting H.R. Rep. No. 109-72); *see also id.* (reviewing Second Circuit authority applying presumption favoring judicial review to ensure channeling provisions

---

[10] Ms. Chung also challenges her illegal detention, a claim over which this Court has jurisdiction as set forth in the accompanying reply in further support of her preliminary injunction motion.

only channel claims reviewable before administrative agency). This principle underlying the channeling-vs-stripping distinction applies fully here and compels the conclusion that the Court has jurisdiction to hear Ms. Chung's claims, which could not be heard in removal proceedings or via PFR.

> ### 1. Section 1252(b)(9) channels only those issues adjudicated by the IJ or BIA that affect the validity of the final order of removal.

The Supreme Court has emphasized the "narrow" scope of 1252(b)(9), clarifying that where, as here, "parties are not challenging any removal proceedings," "it is certainly not a bar." *Regents*, 591 U.S. at 19. Thus, the Court has rejected "uncritical literalism," *Jennings*, 583 U.S. at 293, that would find claims "aris[e] from" removal proceedings merely because the "claims would not exist but for the Government's decision to remove an alien." *E.O.H.C.*, 950 F.3d at 185; *see Jennings*, 583 U.S. at 293 (rejecting but-for test). Rather, the issues channeled by 1252(b)(9) and (a)(5) are much narrower: because these provisions channel to the court of appeals review of a "final order of removal," they "encompass *only* the rulings made by the immigration judge ["IJ"] or Board of Immigration Appeals ["BIA"] that affect the validity of the final order of removal." *Nasrallah v. Barr*, 590 U.S. 573, 579, 582 (2020) (emphasis added); *see also id.* (limiting channeling provisions to "matters on which the validity of the final order is contingent" which "merge into the final order for purposes of judicial review") (quoting *Immigr. and Naturalization Serv. v. Chadha,* 462 U.S. 919, 938 (1983)) . The Supreme Court "emphasized that this definition does not 'encompass all determinations made during and incident to the administrative proceeding on removability;'" to the contrary, it "excludes a decision that relates to an alien's ultimate removal but 'does not affect the validity' of" the removal order. *Bhaktibhai-Patel v. Garland*, 32 F. 4th 180, 189 (2d Cir. 2022) (quoting *Nasrallah*, 590 U.S. at 584). Under this authority, if the IJ or BIA cannot pass on a claim—which necessarily means any order of removal is not contingent on a

particular resolution of that claim—it does not merge into a final order of removal and is not covered by these channeling provisions. As laid out fully below, Ms. Chung, therefore, will not get another bite at the apple. *See NWDC Resistance*, 493 F. Supp. 3d at 1012–13 ("The state [sic] is properly read to preclude a 'second bite at the apple.' It should not be interpreted to deprive a plaintiff of his first bite.") (quoting *Martinez v. Napolitano*, 704 3d. 620, 622 (9th Cir. 2012)). For Ms. Chung's First Amendment challenge to the Policy, it is, in short, now or never, here or nowhere.

Defendants simply ignore this authority, fully applicable and dispositive here. Ms. Chung does not seek review of a final order, or any issue on which the IJ or BIA would rule in removal proceedings. The Rubio Determination was not made in removal proceedings, but separate and apart from contemplated proceedings, which have not commenced. *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1032 (9th Cir. 2016) ("Ancillary determinations made outside the context of a removal proceeding, however, are not subject to [the channeling provisions].") (quoting *Torres–Tristan v. Holder*, 656 F.3d 653, 658 (7th Cir. 2011)); *Aguilar v. U.S. ICE*, 510 F.3d 1, 11 (1st Cir. 2007) (reading "arising from" "to exclude claims that are independent of, or wholly collateral to, the removal process"). Even if proceedings commence, as shown below, the IJ and BIA are prohibited from considering the types of constitutional claims presented here. Moreover, these claims are irrelevant to the validity of any removal order: under binding BIA precedent, as shown below, the IJ and BIA cannot inquire into the basis or constitutionality of the Rubio Determination or any underlying policy or considerations. Thus, Ms. Chung challenges precisely the type of "ancillary" determinations, *see id.*, made "incident to the administrative proceeding[,]" *see Bhaktibai-Patel*, 32 F. 4th at 189, which fall outside the scope of the channeling provision.

Defendants' invocation of *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011), Mem. 19–20, does nothing to change this analysis. In stark contrast to the claims presented here, the plaintiff there sought to escape the legal consequences that flowed from a prior removal order by forcing adjudication of a relief application that would "render … invalid" that existing order. *Id.* Thus, although not styled a challenge to a removal order, the Court held the "substance of the relief" implicated the validity of a removal order. *Id.*[11] Here, no removal order exists; proceedings have not commenced; and, if commenced, proceedings would not entail consideration of issues presented here, such as whether the Rubio Determination was unconstitutional. The substance of the relief sought here would not invalidate any removal order. Rather, it is more akin to a collateral challenge to a criminal conviction that could form the basis for future removal proceedings[12]—which indisputably falls outside the scope of 1252(b)(9).

> **2.    If 1252(b)(9) channels Ms. Chung's claims, they will never receive review, the "extreme" result that *Jennings* cautions against.**
>
> > **a.    Review is unavailable in either immigration court or before the Board of Immigration Appeals.**

Ms. Chung's claims generally fall outside the authority of the IJ and BIA to review, because they lack power to hear constitutional challenges. *See, e.g.*, *United States v. Gonzales-Roque,* 301 F.3d 39, 47 (2d Cir. 2002) ("[C]onstitutional claims lie outside the BIA's jurisdiction[.]"); *Matter of G-K-*, 26 I. & N. Dec. 88, 96 (BIA 2013) (powerless to address void-for-vagueness claim);

---

[11] Although the relief application in *Delgado* was adjudicated by USCIS, and not formally as a part of removal proceedings, relief and waiver applications of the sort at issue there are routinely adjudicated in removal proceedings as part of the process of determining whether to enter a final order of removal. *Delgado* emphasized that the agency's "division of administrative responsibility" over routine adjudications of removability and relief applications did not permit plaintiff to "circumvent" the scheme whereby issues affecting the validity of an order are channeled. *Id.* This logic does not apply here, where the Rubio Determination is made by another executive branch agency—never through removal proceedings—and its constitutionality *vel non* is both unreviewable in proceedings and irrelevant to whether the agency enters a final order of removal.

[12] Indeed, the BIA expressly held that the Secretary of State determination is "equivalent to a duly-certified record of criminal conviction by a state or federal court." *In re Ruiz-Massieu*, 22 I&N Dec. 833, 844 (BIA 1999).

*Matter of C-*, 20 I. & N. Dec. 529, 532 (BIA 1992) (powerless to address *ex post facto* claim since "it is settled that the [IJ] and this Board lack jurisdiction to rule upon the constitutionality of the [INA] and the regulations"); *Matter of Valdovinos*, 18 I. & N. Dec. 343, 345 (BIA 1982) (powerless to address overbreadth). This limitation holds for as-applied constitutional challenges too, with few exceptions not relevant here.[13] *Matter of Ramos*, 15 I. & N. Dec. 671, 675 (BIA 1976) (powerless to address respondent's "as applied" equal protection and due process challenges because "we do not entertain constitutional challenges"); *Matter of H-,* 3 I. & N. Dec. 411, 419, 456 (BIA 1949) (powerless to address First Amendment and retroactivity arguments "as applied to the respondent").

The fact that IJ authority is limited to examining whether the government can support its proffered grounds for removal, 8 C.F.R. § 1240.1(a), only further confirms that Ms. Chung's claims cannot be reviewed in removal proceedings. In the context of the Foreign Policy Ground, DHS carries its burden to establish its proffered ground of removability by presenting a determination by the Secretary of State under 1227(a)(4)(C) that cites a facially "legitimate and bona fide" reason. *In re Ruiz-Massieu*, 22 I & N. Dec. 833, 846 (BIA 1999).[14] This may be done without regard to the resolution of any of the issues presented by Ms. Chung's claims in the instant action. The BIA has made clear that the IJ must treat the Rubio Determination "as conclusive evidence of the respondent's deportability," rejecting the view that the "Immigration Judge [or] this Board [have the] authority to question the validity of that determination." *Id.* at 843 (cleaned

---

[13] The BIA can consider certain "due process claim[s] alleging a procedural error" in *the immigration proceeding itself*, because such errors would be "correctable by the administrative tribunal." *Gonzales-Roque,* 301 F.3d at 47. Consistent with this principle, IJs may engage in limited suppression analyses involving the introduction of evidence gathered through improper means. *Almeida-Amaral v. Gonzales,* 461 F.3d 231 (2d Cir. 2006). However, Defendants do not argue, nor could they, that the IJ or BIA may decide the constitutional questions presented here.

[14] Indeed, the "facially legitimate and bona fide" standard forecloses "balanc[ing] the reason given against [an] asserted constitutional right." *Dep't of State v. Muñoz,* 602 U.S. 899, 908 (2024).

up); *see also* Immigration Practitioners Amicus Br. 11–13, ECF 28-1 (examining extreme BIA deference to Secretary's determination). Indeed, IJs may not even inquire into the "reasonableness" of the Secretary of State's determination, *Ruiz-Massieu*, 22 I. & N. Dec. at 833, much less whether it was unconstitutional retaliation, *id.* at 838 n.6 (noting BIA has no authority to address First Amendment and void-for-vagueness claims asserted in parallel federal court suit). Thus, the regulations and caselaw clearly prohibit administrative examination of whether the Rubio Determination or underlying Policy are unlawful.

Consistent with the foregoing, courts uniformly find actions are not covered by 1252(b)(9) where a plaintiff's claims cannot be heard in removal proceedings. These claims do not "arise from" removal proceedings but instead are "independent of, or wholly collateral to, the removal process." *Aguilar*, 510 F.3d at 11 ("[C]ertain claims, by reason of the nature of the right asserted, cannot be raised efficaciously within [removal] proceedings. . . . Given Congress's clear intention to channel, rather than bar, judicial review through . . . 1252(b)(9), reading 'arising from' as used in that statute to encompass those claims would be perverse."); *see also, e.g.*, *Diaz-Bernal*, 758 F. Supp. 2d at 122 ("[B]ecause the immigration judge could not have afforded the plaintiffs relief for the constitutional claims raised in this action, those claims do not arise out of the order of removal, and jurisdiction is not barred by section 1252(b)(9)."); *Jafarzadeh v. Duke*, 270 F. Supp. 3d 296, 300, 309 (D.D.C. 2017) (exercising jurisdiction over constitutional challenge to "agency-wide policy" that resulted in removability as not direct challenge to removal and "outside of the scope of the administrative process"). Defendants point to *no* cases where 1252(b)(9) was applied to channel a claim that would be entirely unreviewable in removal proceedings, and there is none.

Instead, Defendants advance precisely the type of "expansive interpretation" of "arising from" that "would lead to staggering" and "absurd" results. *Jennings*, 583 U.S. at 293. As noted,

17

in *Massieu*, the BIA indicated that the immigration court's role in adjudicating removability under the Foreign Policy Ground was largely "ministerial," and that the immigration court was required to treat the Secretary of State's determination as the "equivalent to a duly certified record of criminal conviction by a state or federal court." *Id.* at 844; *see also Matter of Khalik*, 17 I & N Dec. 518, 519 (BIA 1980) (holding that "immigration judge cannot go behind the judicial record [of conviction]"). In the same way individuals with state and federal court convictions can challenge the validity of those convictions in collateral proceedings, yet are unable to challenge the validity of those convictions before an IJ and the BIA, Ms. Chung must be afforded the chance to challenge the validity of the Rubio Determination in collateral proceedings; indeed, it will be her only chance. *Cf. E.O.H.C.*, 950 F.3d at 180 (explaining that *Jennings* establishes a "now-or-never principle"—"[i]f later is not an option, review is available now").

> **b.    Ms. Chung's constitutional claims cannot be reviewed in a petition for review by the Second Circuit.**

Nor is the unavailability of administrative review cured by the PFR process. Given that IJs—and, *a fortiori*, the BIA—have no authority to build a factual record relevant to these issues, it would not be possible for the Court of Appeals to consider her fact-specific First Amendment and due process claims. *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) (requiring remand where "reviewing court simply cannot evaluate the challenged agency action on the basis of the [agency] record" because it "is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed"); *Diaz v. Paterson*, 547 F.3d 88, 97 (2d Cir. 2008) ("Due process is inevitably a fact-intensive inquiry.") (cleaned up); *Radwan v. Manuel*, 55 F.4th 101, 124 n.14 (2d Cir. 2022) (calling First Amendment and related due process claims "extremely fact-specific"). Indeed, the Second Circuit has recognized that the IJ and BIA lack authority to consider First Amendment retaliation claims and that judicial review via PFR is thus unavailable, indicating that

the only recourse is to the district court. *Lennon v. Immigr. and Naturalization Serv.*, 527 F.2d 187, 195 (2d Cir. 1975) (instructing district court to hear any such claim "expeditiously" if needed and advising that "courts will not condone selective deportation based upon secret political grounds"). The same principles are fully applicable here and foreclose any suggestion that the PFR process provides an avenue for Ms. Chung's claims.

Recent experience with proceedings under the Foreign Policy Ground confirms the foregoing. This Court need look no further than the removal proceedings underway in the case of Mahmoud Khalil, another U.S. lawful permanent resident student at Columbia University whom Defendants have similarly arrested and targeted under the same unlawful Policy, and who is mentioned in the same Rubio Determination memo filed with this Court. *See* Vides Decl. Ex. A. Letter from Petitioner, *Khalil v. Trump*, 25-cv-1963 (D.N.J. Apr. 12, 2025), ECF 198-1.[15]

Second, any considerations that led a different executive branch agency to determine Ms. Chung's presence in the United States compromised foreign policy interests because of her political speech will not form a part of the removal order that receives judicial review via PFR. Any constitutional violations underlying the Rubio Determination, the Policy, and the investigation leading up to the Determination as applied to Ms. Chung will not "merge" into a final order of removal because they do not affect the validity of any final order of removal. They are legally irrelevant to the IJ and BIA's adjudication of removability, and beyond the scope of issues they are authorized to consider. *See supra* Section I.A.3. Thus, these issues necessarily do not "affect the validity" of any final order of removal, and as such cannot be reviewed through the PFR process. *See Bhaktibhai-Patel v. Garland*, 32 F.4th 180 at 189; *see also Torres-Tristan v.*

---

[15] *See also* Oliver Laughland, *US judge rules Mahmoud Khalil can be deported for his views*, THE GUARDIAN (Apr. 11, 2025), *available at* https://www.theguardian.com/us-news/2025/apr/11/mahmoud-khalil-deportation-ruling-immigration.

*Holder*, 656 F.3d 653, 658 (7th Cir. 2011) (rejecting PFR jurisdiction over "ancillary determination" because it is a "decision separate and apart from the final order of removal"). Finding these claims covered by (b)(9) would not *channel* them, but rather would render them unreviewable in the absolute, a result in direct contradiction to the Supreme Court's guidance. *See Jennings*, 583 U.S. at 293.

Defendants rely on *Massieu v. Reno*, Opp. 21, but that decision is inapposite. In *Massieu*, the district court held the Foreign Policy Ground to be unconstitutional on three bases, all of which were facial: (*i*) under the void for vagueness doctrine, (*ii*) on due process grounds, and (*iii*) as an unconstitutional delegation of legislative power. 91 F. 3d 416, 418 (3d Cir. 1996). Characterizing those claims as "directly challeng[ing] deportability," the Third Circuit held, interpreting pre-(b)(9) provisions of the INA, that Massieu could bring such a challenge through a PFR. *Id.* at 421. In stark and dispositive contrast to the situation here, the court emphasized that all of Massieu's claims could "receive meaningful judicial review" via PFR. *Id.*

## II.    MS. CHUNG'S CLAIMS ARE NOT OTHERWISE DEFECTIVE

### A.    Ms. Chung Is in Custody for Purposes of Habeas Relief Because Her Liberty Is Substantially Curtailed

This Court "would badly serve the purposes and the history of the writ to hold that . . . the petitioner's failure to spend even 10 minutes in jail is enough to deprive the District Court of power to hear [her] constitutional claim." *Hensley v. Mun. Ct., San Jose Milpitas Jud. Dist.*, 411 U.S. 345, 353 (1973). Ms. Chung can invoke habeas relief because she is "in custody in violation of the Constitution or laws or treaties of the United States," as contemplated by 28 U.S.C. § 2241(c)(3). "[A]bsent judicial intervention," Ms. Chung is at the mercy of the government, which has declared its intention to arrest, detain, and deport her all in retaliation for her lawful expressive activity.

*Ragbir*, 923 F.3d at 76. Her liberty—both at the time of filing and *right now*—is substantially curtailed.

The Second Circuit's recent decision in *Ragbir* is instructive. *See Ragbir*, 923 F.3d at 53. The Court of Appeals looked closely at *Hensley*, which had found that "an individual released on his own recognizance from state detention remained in the state's custody." *Id.* at 75 (citing *Hensley*, 411 U.S. at 351). The *Ragbir* court explained:

> Two primary considerations drove the Court's conclusion in *Hensley*. First, the petitioner was "subject to restraints not shared by the public generally" because "[h]is freedom of movement rest[ed] in the hands of state judicial officers, who may demand his presence at any time and without a moment's notice." Second, the petitioner "remain[ed] at large only by the grace of a stay entered first by the state trial court and then extended by two Justices of [the Supreme] Court."

*Ragbir,* 923 F.3d at 75 (quoting *Hensley*, 411 U.S. at 351) (alterations in *Ragbir*). And, as the Second Circuit noted, *Hensley* had rejected the argument that habeas relief would be available only when that petitioner was again physically detained. *Id.* at 353. The Supreme Court has stated even more directly that "the writ is available . . . to attack *future* confinement and obtain future releases." *Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973) (emphasis added).

Comparing Ragbir's situation to that of Hensley's, the *Ragbir* court found "clear" similarity. *Ragbir*, 923 F.3d at 75. Ragbir would "obvious[ly]" have been in custody for purposes of habeas relief if he were currently in the government's physical confinement or had already been deported—but the fact that he was neither was "not for a lack of effort on the part of the Government." *Id.* at 75–76. Much like in *Hensley*, where the government had "emphatically indicated its determination to put [the petitioner] behind bars" without court-ordered relief, *Hensley*, 411 U.S. at 351, Mr. Ragbir's deportation process was stopped only because he had obtained relief from the district court, and at oral argument on appeal. "[T]he Government could

not represent . . . that—absent a stay entered by [the] Court and the stay previously entered in the District of New Jersey—ICE would not deport Ragbir pending resolution of this appeal." *Ragbir*, 932 F.3d at 76. Because Ragbir faced imminent deportation, "which necessarily involves a period of detention," the Second Circuit found a "present, substantial curtailment of Ragbir's liberty," and, accordingly, that he was in custody for purposes of habeas relief. *Id.* (quoting *Hensley*, 411 U.S. at 351).

So too here. Ms. Chung faces imminent detention and deportation proceedings: Defendants explicitly acknowledge that ICE has attempted to locate her "to perform a civil arrest" starting on March 8 and continuing to "the present." Vides Decl. ¶ 10. Defendants have spared no effort to arrest and detain Ms. Chung, a 21-year-old college junior. Among other things, ICE has issued multiple administrative subpoenas to Columbia University for surveillance footage and Ms. Chung's swipe card access data, and ICE agents even executed a judicial warrant for Ms. Chung's records. *Id.* ¶¶ 13-16. Defendants also state affirmatively that, "because of the federal court's TRO entered on March 25, 2025, ICE has been unable to arrest and detain Petitioner," *id.* ¶ 17—that is, like the *Hensley* and *Ragbir* petitioners, Ms. Chung remains free only because this Court has temporarily restrained Defendants from arresting and detaining her. If she *is* detained (in violation of her constitutional rights), Defendants have conceded that she will not have access to a bond proceeding during her removal proceedings, so Ms. Chung would face indefinite detention. *See* Levitova Decl., Ex. B at 4:4-6, 6:21-7:1.

The *Hensley* Court's rationale is all the more salient here, given Defendants' tactic of rapidly transferring individuals it targets in retaliation for their lawful speech to remote detention centers far from family and community.[16] There is little reason to reason to believe that Defendants

---

[16] ICE moved Mr. Khalill from New York to Louisiana, via New Jersey and Georgia; Dr. Khan Suri from Virginia to Louisiana and then Texas; Ms. Kordea from New Jersey to Texas, Compl. ¶¶ 99-140, ECF No. 1, and Ms. Öztürk

here do not wish to also transfer Ms. Chung far away from her home, family, and friends. Although Defendants suggest that Ms. Chung should submit to unconstitutional and unlawful detention and only then file habeas "in the district of confinement," Mem. at 20, not only would this subvert the purpose of the writ, but it would also create an impermissible "gap in the fabric of habeas." *Khalil v. Joyce*, 2025 WL 972959, at * 37 (D.N.J. Apr. 1, 2025) ("Our tradition is that there is no gap in the fabric of habeas—no place, no moment, where a person held in custody in the United States cannot call on a court to hear his case and decide it."); *Ozturk*, 2025 WL 1145250, at *14 (considering delay it would take noncitizen to potentially receive review through PFR process as compared to habeas and determining it would lead to impermissible gap in habeas rights).

She is, for purposes of habeas relief, in custody as contemplated by 28 U.S.C. § 2241. Defendants cite no caselaw at all to refute this conclusion.

## B.    The Political Question Doctrine Is Inapplicable

Defendants advance a bold proposition: that the executive branch may freely seek to detain a permanent resident who has called the United States home since she was seven years old and who is now a college junior solely in retaliation for her constitutionally-protected speech that took place entirely within the United States and concerned matters related to her university's handling of student discipline. Defendants claim they can do this free from any judicial review or scrutiny whatsoever because they chose to retaliate against Ms. Chung based on an INA provision that mentions foreign policy. Mem. at 22–23 (Ms. Chung's claims are nonjusticiable because they implicate "foreign affairs" and "immigration policy"). As the Supreme Court observed in another context, the First Amendment and due process protections squarely implicated here would be a

---

from Massachusetts to New Hampshire, to Vermont, to Georgia, and finally Louisiana, *Ozturk*, 2025 WL 1145250, at *2-3. ICE planned to move Mr. Mahdawi to Louisiana but was thwarted by court order. Order, *Mahdawi v. Trump*, No. 25-cv-389 (D. Vt. Apr. 14, 2025), ECF No. 6.

"craven watchdog indeed if it retreated to its kennel" whenever Defendants invoked any foreign policy consideration, no matter how implausible, in the context of unconstitutional retaliation. *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 266 (2010). Defendants commit the "error" of "suppos[ing] that every case or controversy which touches foreign relations lies beyond judicial cognizance." *Baker v. Carr*, 369 U.S. 186, 211 (1962). But it is an "obligation of the federal courts to exercise the jurisdiction given them," *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976), even in cases they "would gladly avoid[,]" *Zivotofsky v. Clinton*, 566 U.S. 189, 194 (2012).

Ms. Chung's claims do not require the Court to evaluate foreign policy; rather, they ask the Court to assess executive action under longstanding U.S. constitutional principles. Courts "will not stand impotent before an obvious instance of a manifestly unauthorized exercise of power." *Baker*, 369 U.S. at 217. "[I]t is a court's duty to determine whether the political branches, in exercising their powers, have 'chosen a constitutionally permissible means of implementing that power.'" *Planned Parenthood Fed'n of Am., Inc. v. Agency for Int'l Dev.*, 838 F.2d 649, 655-56 (2d Cir. 1988) (quoting *Chadha*, 462 U.S. at 941).

The political question doctrine is a "narrow exception" to courts' presumptive exercise of jurisdiction. *Zivotofsky*, 566 U.S. at 195. Here, straightforward constitutional jurisprudence creates "judicially manageable standards" to adjudicate Ms. Chung's claims. *Baker*, 369 U.S at 217; *see Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 937 F.2d 44, 49 (2d Cir. 1991) ("The fact that the issues before us arise in a politically charged context does not convert what is essentially an ordinary tort suit into a non-justiciable political question."); *see also Kadic v. Karadzic*, 70 F.3d 232, 249 (2d Cir. 1995) ("Not every case 'touching foreign relations' is nonjusticiable, and judges should not reflexively invoke

24

these doctrines to avoid difficult and somewhat sensitive decisions in the context of human rights.") (internal citations omitted). There is nothing novel about Ms. Chung's First Amendment, due process, or other claims; rather, Defendants seem to conflate the public attention that their outrageous and unwarranted course of action in this case has naturally drawn with a lack of judicially manageable standards.

Even assuming the Policy, or its application to Ms. Chung, "declares a foreign or national policy . . . , it does not follow that" subjecting her to "unconstitutional limitations on [her] free speech is also foreign or national policy." *Planned Parenthood*, 838 F.2d at 656. As here, a constitutional challenge to the application of executive branch policy to a plaintiff whose First Amendment rights are infringed "merely requires the court to apply well-established principles of First Amendment jurisprudence, an area traditionally vested in the federal courts." *Id.*; *see also Khouzam v. Att'y Gen. of U.S.*, 549 F.3d 235, 250 (3d Cir. 2008) ("We apply *Baker* with particular caution . . . where individual liberty hangs in the balance."). Indeed, even in the context of a highly sensitive inter-branch dispute about Jerusalem, the Supreme Court has affirmed that applying constitutional law to a challenge to executive authority is "a familiar judicial exercise." *Zivotofsky*, 566 U.S. at 196. Ultimately, the principle that courts must review claims regarding the legality of executive action is as old as the Republic, *see Marbury v. Madison*, 5 U.S. 137, 166 (1803), and it would be a shocking perversion of the political question doctrine were executive branch say-so about "foreign policy considerations" permitted to eviscerate core First Amendment protections within the United States.

Defendants' position to the contrary proves too much and would swallow the First Amendment. On their view, immigration is always a political issue pertaining to foreign relations, and such issues are always beyond judicial review. Mem. 23–24. This would immunize all

25

immigration policies of any significance from judicial review, but that is simply not the law. *See, e.g.*, *Regents*, 591 U.S. at 1; *Biden v. Texas*, 597 U.S. 785 (2022). Defendants do not, and cannot, explain what foreign policy issues are implicated by this Court's evaluation of the executive's retaliation against Ms. Chung for her legally protected speech concerning domestic issues.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Ms. Chung's complaint should be denied.

Dated: April 29, 2025                                    Respectfully submitted,
       New York, NY


CLEAR PROJECT
MAIN STREET LEGAL SERVICES, INC.
_____/s/_____
Naz Ahmad
Ramzi Kassem
Tarek Z. Ismail
Mudassar Hayat Toppa
CUNY School of Law
2 Court Square West, 5th Floor
Long Island City, NY 11101
(718) 340-4558


EMERY CELLI BRINCKERHOFF ABADY
WARD & MAAZEL LLP
_____/s/_____
Jonathan S. Abady
Katherine Rosenfeld
Sonya Levitova
One Rockefeller Plaza, 8th Floor
New York, NY 10020
(212) 763-5000


HUMAN RIGHTS FIRST
_____/s/_____
Joshua Colangelo-Bryan
121 West 36th Street, PMB 520
New York, NY 10018
(212) 845-5243


LAWYERS' COMMITTEE FOR CIVIL
RIGHTS OF THE SAN FRANCISCO BAY
AREA
_____/s/_____
Jordan Wells
131 Steuart Street # 400
San Francisco, CA 94105
(415) 543-9444


LAW OFFICE OF MATTHEW BRAY
_____/s/_____
Nathan Yaffe
119 West 23rd Street, Suite 900
New York, NY 10011

(646) 253-0580

**JONATHAN HAFETZ, ESQ.**
_____/s/_____
Jonathan Hafetz
1109 Raymond Blvd.
Newark, NJ 07102
(917) 355-6896

*Attorneys for Plaintiff-Petitioner*

28

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1, the above-named counsel hereby certifies that this brief complies with the word count limitation of Local Civil Rule 7.1(c).

1.     Exclusive of the exempted portions of the brief, as provided in Local Civil Rule 7.1(c), the brief contains 8,741 words.

2.     The brief has been prepared using Microsoft Word for Office 365. As permitted by Local Civil Rule 7.1(c) the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.