ORIGINAL

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/18/25

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————————————

PAUL PHILIPPE OF ROMANIA, on behalf of
the ESTATE OF KING CAROL II OF ROMANIA,

        Plaintiff,

    v.

CHRISTIE'S, INC.,

        Defendant.

————————————————————————————

CHRISTIE'S, INC.,

        Counterclaim and Third-Party
        Plaintiff,

    v.

PAUL PHILIPPE OF ROMANIA, on behalf of
the ESTATE OF KING CAROL II OF ROMANIA,

        Counterclaim Defendant, and

ACCENT DELIGHT INTERNATIONAL LTD. and
STATE OF ROMANIA,

        Third-Party Defendants.

————————————————————————————

ACCENT DELIGHT INTERNATIONAL LTD.,

        Interpleader Defendant and
        Cross-Claim Plaintiff,

    v.

PAUL PHILIPPE OF ROMANIA, on behalf of
the ESTATE OF KING CAROL II OF ROMANIA,
and STATE OF ROMANIA,

        Interpleader Defendants and
        Cross-Claim Defendants.

————————————————————————————

25 Civ. 1151 (LLS)

**OPINION & ORDER**

- 1 -

Interpleader and third-party defendant State of Romania moves to dismiss this action in its entirety, or in the alternative, have the Court abstain from jurisdiction or stay this action pending resolution of Romania's concurrent state court case. Dkt No. 45. All other parties to this action, plaintiff and cross- and counterclaim defendant Paul Philippe, defendant and interpleader plaintiff Christie's, and third-party defendant and cross-claim plaintiff Accent Delight (collectively the "Opposing Parties"), oppose Romania's motion in concurring briefs. Dkt. Nos. 49, 51, 55. For the reasons stated below, Romania's motion to dismiss is granted in part and denied in part. The Court will neither abstain from jurisdiction over the surviving claims, nor stay the case.

## Background

The following facts are taken from Paul Philippe's complaint (Dkt. No. 1), Christie's cross-claim (Dkt. No. 18), Accent Delight's counterclaim (Dkt. No. 39), and Romania's motion to dismiss (Dkt. No. 45) and are presumed true for the purposes of this motion.

This action is an ownership dispute over the painting *Saint Sébastien* by Spanish renaissance artist Doménikos Theotokópoulos, widely known as El Greco ("the Painting"). The Painting was consigned to Christie's by British Virgin Islands-based art dealer Accent Delight and set for auction on February

- 2 -

5, 2025. Dkt. No. 18 at 11. On January 29, 2025, responding to public notice of the auction, Romania asserted ownership of the Painting — which it claims was unlawfully removed from the country in 1947 — and Christie's withdrew the Painting from sale. Id. at 12.

On February 9, 2025, after news coverage of these events, Paul Philippe brought a claim for replevin against Christie's to recover possession of the Painting. Dkt. No. 1. Paul Philippe bases his ownership claim on allegations that the Painting was left to King Carol II (to which Philippe claims to be the rightful heir) via King Carol I's will but was stolen and illegally transported out of Romania. Id. ¶¶ 1, 15, 18-20.

Separately, on February 26, 2025, Romania filed a complaint in the New York Supreme Court, New York County seeking recovery of the Painting, based necessarily on the same questions regarding succession of Romanian kings' property and alleged unlawful removal from Romania. Dkt. No. 45-1 at 4; NYSCEF Doc. No. 2 (Compl.), State of Romania v. Saint Sebastian, Index No. 651068/2025 (Sup. Ct. N.Y. Cnty. Feb. 26, 2025). Romania's amended complaint names the other claimants present in this action, Paul Philippe and Accent Delight, as well as the Painting in rem as defendants. NYSCEF Doc. No. 61 (Am. Compl.), State of Romania, Index No. 651068/2025. At the agreement of all parties, that case has been held in abeyance since June 25,

- 3 -

2025, pending resolution of this motion. NYSCEF Doc. No. 59 (Stip. and Order), State of Romania, Index No. 651068/2025.

On February 27, 2025, Christie's answered Paul Philippe's complaint with a Rule 22 interpleader action against all three parties claiming ownership to the Painting (collectively the "Claimants"). Dkt. No. 18. Accent Delight then filed its own cross-claim against the other two Claimants asserting it holds proper title. Dkt. No. 39.

Romania now moves to dismiss the entire federal action for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), or in the alternative, have this Court abstain or stay the federal case in favor of Romania's state court proceeding. Dkt. No. 45.

## Legal Standard

Motions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) "may attack either the facial sufficiency of the pleadings in the complaint or the existence of subject matter jurisdiction in fact." Dow Jones & Co. v. Harrods, Ltd., 237 F. Supp. 2d 394, 404 (S.D.N.Y. 2002), aff'd, 346 F.3d 357 (2d Cir. 2003). In a factual challenge, as Romania's is here, "the court's review is not confined to the pleadings, but may examine extraneous evidence submitted with the motion and make any findings of fact necessary to determine the existence of subject matter jurisdiction." Id.

- 4 -

Nevertheless, "[t]he burden of proving jurisdiction is on the party asserting it." Robinson v. Overseas Mil. Sales Corp., 21 F.3d 502, 507 (2d Cir. 1994) (citation omitted). "To survive a Rule 12(b)(1) motion, the plaintiff must establish that the court has subject matter jurisdiction as to each claim." Ansary v. Cent. Bank of Curacao & Sint Maarten, 735 F. Supp. 3d 37, 44 (D.D.C. 2024) (citing Town of Chester v. Laroe Ests., Inc., 581 U.S. 433, 439 (2017)).

## Discussion

Romania moves to dismiss this entire action in favor of its concurrent state court proceeding involving essentially the same parties and claims. Dkt. No. 45-1 at 1-2. Romania asserts that this Court lacks subject matter jurisdiction over each of the Opposing Parties' claims on two independent bases. First, Romania argues that diversity jurisdiction is an "illusion," which is destroyed when the necessary parties are properly realigned. Id. at 14-18. Second, Romania contends that the Foreign Sovereign Immunities Act ("FSIA") exempts Romania from the Court's jurisdiction. Id. at 12-13.

Both arguments rely on the contention that Romania is an indispensable party, so the Court considers that issue as a threshold matter. Then, because Romania's arguments apply to the

- 5 -

three Opposing Parties' claims differently, the Court considers its jurisdiction over each in turn.

Finally, finding that the Court has jurisdiction over some claims, the Court considers Romania's arguments that the Court should exercise its discretion to abstain or stay the federal case in deference to Romania's concurrent state action.

## I.    Rule 19 Indispensable Parties

The Court agrees that Romania is a necessary and indispensable party to any claim for ownership of the Painting, as are the two other Claimants, Paul Philippe and Accent Delight. Necessary parties are those whose absence from an action would prevent the accordance of complete relief, impair their ability to protect their interests, or subject an existing party to multiple or inconsistent liabilities. Fed. R. Civ. P. 19(a)(1). If a necessary party cannot be joined for jurisdictional reasons, "the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed" because the nonparty is "indispensable." Rose v. Simms, 1995 WL 702307, at *2 (S.D.N.Y. Nov. 29, 1995) (citation omitted); Fed. R. Civ. P. 19(b).

The Claimants are all necessary here because resolution of this action "necessarily turns on the ownership rights in the property in question." 2 Montauk Highway LLC v. Glob. Partners

- 6 -

LP, 296 F.R.D. 94, 101 (E.D.N.Y. 2013). Due to the ownership nature of the Painting, a decision on any claim before this Court will necessarily decide the exclusive ownership rights of all Claimants, and any Claimant's absence would inherently impair their ability to protect their interests. All Claimants are also indispensable because judgment rendered in their absence would create unmitigable prejudice against that Claimant's rights, and because the Claimants retain other adequate remedies (via either the remaining claims here or the state case). See Fed. R. Civ. P. 19(b) (describing considerations for the Court's determination of indispensability).

Finding each Claimant indispensable, the Court now considers Romania's arguments that the Court does not have proper jurisdiction due to lack of complete diversity and the FSIA. Where a Claimant cannot be added for jurisdictional reasons to any claim presented here, that claim must be dismissed.

## II.   Paul Philippe's Replevin Claim

The Court lacks jurisdiction over Paul Philippe's replevin claim because Romania and Accent Delight are indispensable parties. Paul Philippe initiated this action by filing a replevin claim, seeking recovery of stolen personal property, solely against Christie's as the current possessor of the

Painting. Dkt. No. 1. The alleged basis for this Court's subject matter jurisdiction over that action is diversity between Christie's, a citizen of New York, and Paul Philippe, a citizen of Romania and the United Kingdom. Id. ¶¶ 10-11. Romania argues that the Court lacks jurisdiction because Romania, a foreign state, and Accent Delight, a citizen of the British Virgin Islands, are necessary parties but their joinder would destroy complete diversity under 28 U.S.C. § 1332(a). Dkt. No. 45-1 at 17-18.

Even though replevin claims are typically proper when filed solely against the possessor of disputed property, any judgment regarding ownership of the Painting without Romania or Accent Delight would necessarily be inadequate and "clearly prejudice" both parties, making them indispensable parties to the claim.[1] 2 Montauk Highway LLC, 296 F.R.D. at 100-01 (dismissing replevin action under Fed. R. Civ. P. 19(b) where plaintiff failed to join alleged owner of gas station, because claim brought solely against possessor could not "accord complete relief among the existing parties"). Since adding either indispensable alien

---

[1] Because Accent Delight is also an alien, the result is the same whether or not Romania is immune from the jurisdiction of this Court or Romania's claims are barred by res judicata or collateral estoppel. Thus, the Court need not consider those issues here. For the same reason, the Court need not determine whether the logic of 2 Montauk Highway extends to Romania as merely an adverse claimant and not an alleged owner in privity of contract with the possessor, as Accent Delight is to Christie's.

- 8 -

would destroy diversity, Rule 19(b) requires dismissal of Paul Philippe's action. Therefore, Romania's motion to dismiss is granted as to the replevin claim.

### III.    Christie's Interpleader Claim

The Court next examines Romania's arguments regarding lack of diversity jurisdiction and its protection under the FSIA as applied to Christie's interpleader claim. The Court finds that it has jurisdiction because diversity is complete and the claim is exempt from the FSIA.

### A. Diversity Jurisdiction

Romania argues that because Christie's interpleader action was a "derivative […] and noncompulsory counterclaim" and Christie's "is a nominal party" with no interest in the Painting, "Christie's interpleader action cannot be used to create jurisdiction […] that did not exist at the outset." Dkt. No. 45-1 at 18. While the jurisdictional failing of Paul Philippe's claim cannot be remedied by Christie's subsequent suit, it also cannot doom jurisdiction of Christie's interpleader claim. Whether Christie's claim is compulsory or permissive is immaterial if the Court has independent jurisdiction over the claim. See Rare Earth, Inc. v. Hoorelbeke, 401 F. Supp. 26, 34 (S.D.N.Y. 1975) ("[I]f the counterclaim does present an independent basis for federal jurisdiction, the court

may adjudicate it as if it were an original claim despite the dismissal of plaintiff's claim." (citing 6 C.Wright & A.Miller, Fed. Prac. & Proc. § 1414 at 80 (1971))); Nat'l Rsch. Bureau, Inc. v. Bartholomew, 482 F.2d 386, 389 (3d Cir. 1973) ("[W]here, as here, jurisdiction is independent, the counterclaim must be allowed to proceed without regard to the fate of the original claim.").

Evaluating the diversity jurisdiction of the interpleader claim on its own, the Court finds that the requirements are satisfied. "In a Rule 22 interpleader action, diversity jurisdiction arises if the party initiating the interpleader (the stakeholder) is diverse as to every claimant." Wei Su v. Sotheby's, Inc., 2019 WL 4917609, at *2 (S.D.N.Y. Oct. 4, 2019) (citing Franceskin v. Credit Suisse, 214 F.3d 253, 259 (2d. Cir. 2000)); see also 7 Fed. Prac. & Proc. Civ. § 1710 (3d ed.) ("[W]hen the claimants are all of the same citizenship but of diverse citizenship from the stakeholder, the lower federal courts have recognized that even a disinterested stakeholder has a very real interest in the first stage of an interpleader action."). Interpleader plaintiff Christie's, a New York citizen, is diverse as to all interpleader defendants, each a foreign alien, so diversity jurisdiction is proper.

## B. Foreign Sovereign Immunities Act

Because Romania's attempt to dismiss on diversity grounds fails, the Court now considers Romania's argument that it is protected from the Court's jurisdiction under the FSIA, 28 U.S.C. § 1602 et seq. Because Romania is an indispensable party, if it is immune under the FSIA, Christie's interpleader action must be dismissed. Dkt. No. 45-1 at 12-18.

The FSIA is "the exclusive source of subject matter jurisdiction over all suits involving foreign states." Letelier v. Republic of Chile, 748 F.2d 790, 793 (2d Cir. 1984) (citation omitted). It is undisputed that Romania is a foreign state as defined in the FSIA. See 28 U.S.C. § 1603(a). Therefore, it may only be subject to the jurisdiction of this Court if the case against it falls into one of the FSIA's enumerated exceptions or it has waived the FSIA's protection.

In its complaint, Christie's asserts that the Court has jurisdiction over Romania under the expropriation and successor exceptions to the FSIA, § 1605(a)(3)-(4). Dkt. No. 18 at 11. In their oppositions to Romania's motion to dismiss, the Opposing Parties instead argue that Romania is not protected by the FSIA under the successor exception or because it waived protection. Dkt. Nos. 49 at 7-13; 51 at 3; 55 at 12-16. The Court agrees that the expropriation exception, "in which rights in property

- 11 -

taken in violation of international law are in issue" (§ 1605(a)(3)), is inapplicable and therefore does not consider it. Because the Court finds that the successor exception applies, as described below, the Court also does not decide whether the claim of waiver has been timely raised or would apply on the merits.

The instant case falls into the successor exception, and therefore the FSIA does not prohibit the Court's jurisdiction over Romania. The successor exception applies to any case "in which rights in property in the United States acquired by succession or gift" are in issue. 28 U.S.C. § 1605(a)(4). Congress's rationale for this exception was that "in claiming rights in a decedent's estate or obtained by gift, the foreign state claims the same right which is enjoyed by private persons." H.R. Rep. No. 94-1487, at 20 (1976).

The central issue in this case is ownership of the Painting. In Romania's own words, its claim to the Painting is based on succession: "Pursuant to King Carol I's will, after his death the Painting became part of the Crown Domain, a public institution that is distinct from the King's personal estate […] Romanian law instructs that the State of Romania is the actual and legal *successor* to the Crown of Romania." Dkt. No. 45-1 at 14 (emphasis added). Similarly, Paul Philippe bases his own

- 12 -

claim to the Painting on the assertion that "Carol I's will left the collection to the 'Romanian Crown,' which Romanian kings interpret to mean their personal property." Dkt. No. 1 ¶ 15. Regardless of how much time has passed since the disbursement of King Carol I's will, the issue of the rightful successor to the Crown is central to deciding who holds proper title to the Painting today.

Moreover, the plain text of the law contradicts Romania's narrow reading that the exception applies only "in a U.S. estate proceeding that is disposing of a decedent's property." Dkt. No. 45-1 at 8. The law specifies "any case" in which these rights are in issue, which in plain meaning encompasses legal actions other than estate proceedings. § 1605(a). The Congressional record accords with this reading by describing a procedural posture incongruent with estate proceedings: "[t]here is general agreement that a foreign state may not claim immunity when *the suit against it* relates to rights in property, real or personal, obtained by gift or inherited by the foreign state." H.R. Rep. No. 94-1487, at 20 (1976) (emphasis added).

Christie's interpleader suit against Romania, in which it is acting as a private litigant attempting to vindicate property rights, falls squarely into the meaning of the successor exception. Therefore, the FSIA does not exempt Romania from the

Court's jurisdiction in this action, and the Court has jurisdiction over all indispensable parties. Romania's motion to dismiss is denied as to Christie's interpleader action.

## IV.    Accent Delight's Cross-Claim

Because Accent Delight's cross-claim is so related to Christie's interpleader claim, the Court can exercise supplemental jurisdiction over the cross-claim and does not need an independent source of jurisdiction. Federal courts have supplemental jurisdiction under 28 U.S.C. § 1367(a) over any claim "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." In the Second Circuit, "disputes are part of the same case or controversy within § 1367 when they derive from a common nucleus of operative fact." Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 335 (2d Cir. 2006) (internal quotation omitted). Here, there can be no question that Accent Delight's cross-claim asserting ownership of the Painting derives entirely from the same facts at the heart of Christie's interpleader claim. The central issues in both involve the rights to King Carol I's estate and whether the Painting was illegally removed from Romania. Therefore, supplemental jurisdiction attaches to Accent Delight's cross-claim, and the lack of complete diversity is not a bar to jurisdiction.

The same FSIA analysis above applies to Accent Delight's succession-based claim. Romania is not immune under the FSIA, and the Court has jurisdiction over all indispensable parties to this claim. Romania's motion to dismiss is therefore denied as to Accent Delight's cross-claim.

## V.    Abstention or Stay

Having found that the Court has jurisdiction over Christie's interpleader claim and Accent Delight's cross-claim, the Court next considers Romania's alternative argument that the Court should abstain from jurisdiction, or at the very least, stay the current case in favor of the concurrent state court proceeding. The state case involves the same claims (ownership of the Painting) and includes substantively the same parties (the other Claimants, Accent Delight and Paul Philippe). NYSCEF Doc. No. 61 (Am. Compl.), State of Romania, Index No. 651068/2025. Notably, at the agreement of the parties, the state court action has been held in abeyance pending resolution of the instant motion. NYSCEF Doc. No. 59 (Stip. and Order), State of Romania, Index No. 651068/2025.

The Court finds that abstention or stay would not further the goals of judicial economy and fairness and would instead impermissibly promote Romania's forum shopping efforts.

Therefore, the Court will not abstain from jurisdiction over the surviving claims or stay the federal case.

### A. **Wilton** Abstention Analysis

"Ordinarily, when confronted with a parallel state action, federal courts have a virtually unflagging obligation to exercise jurisdiction, and should only abdicate in favor of state courts in exceptional circumstances. However, in Wilton v. Seven Falls Co., the Supreme Court approved a standard vesting district courts with greater discretion in declaratory judgment actions." Glenclova Inv. Co. v. Trans-Res., Inc., 874 F. Supp. 2d 292, 305 (S.D.N.Y. 2012) (internal citation and quotation marks omitted). The purpose of this discretion is to allow "considerations of practicality and wise judicial administration" to factor into federal courts' exercise of jurisdiction. Id. "[T]he overarching principle guiding the district court's analysis is whether the questions in controversy between the parties to the federal suit … can better be settled in the proceeding pending in the state court." Id. at 307 (internal quotation omitted).

The discretionary Wilton analysis applies to Christie's interpleader action and Accent Delight's cross-claim since both seek "relief that is declaratory in nature." Id. at 306. Under Wilton, the Court considers nine non-exclusive factors:

> (1) the scope of the pending state proceeding and the nature of the defenses available there; (2) whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding; (3) whether the necessary parties have been joined; and (4) whether such parties are amenable to process in that proceeding; (5) avoiding duplicative proceedings; (6) avoiding forum shopping; (7) the relative convenience of the fora; (8) the order of filing; and (9) choice of law.

Id. at 307.

Both Romania and the Opposing Parties assert that the first, second, third, fourth, and seventh factors are neutral, and the Court agrees. Dkt. Nos. 45-1 at 22-24; 49 at 14. Separately, the Court finds that the fifth and eighth factors are also neutral. Regarding the fifth factor, the Court is conscientious of the imperative to avoid wasting judicial resources and risking inconsistent outcomes, but for a federal court to forgo jurisdiction in deference to an equally situated, subsequently-filed state court case would only continue to invite the type of forum shopping Romania engages in here. Relatedly, the eighth factor is neutral since the state and federal actions were filed within a month and the state action has been held in abeyance pending this decision, meaning there is no judicial economy achieved by abstention. See Machat v. Sklar, 1997 WL 599384, at *9 (S.D.N.Y. Sept. 29, 1997) ("Evaluation of the order of filing is to be 'considered in a common-sense manner by examining how much progress has been made

- 17 -

in each forum.'" (quoting Arkwright-Boston Mfrs. Mutual v. City of New York, 762 F.2d 205, 211 (2d Cir. 1985))). These neutral factors counsel slightly in favor of retaining jurisdiction — even under the more discretionary declaratory judgment standard — because the rationale governing the overall mandate for federal courts to exercise their jurisdiction remains the same. Cf. Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist., 673 F.3d 84, 101 (2d Cir. 2012) ("Where a Colorado River factor is facially neutral, that is a basis for retaining jurisdiction, not for yielding it.").

The sixth factor weighs strongly against abstention, because Romania's actions can only be explained as forum shopping. Where concerns of forum shopping are present, they tend to weigh heavily in a Wilton abstention decision. See, e.g., Glenclova, 874 F. Supp. 2d at 309 ("In this Court's view, the only way to put a stop to, or at least lessen, the forum shopping and jurisdictional sparring is for this Court to bow out of the race."); Managing Directors' Long Term Incentne Plan ex rel. Comm. v. Boccella, 2015 WL 2130876, at *7 (S.D.N.Y. May 6, 2015) ("[A]bstention is prudent here to ensure that Plaintiff does not benefit from forum shopping."). Romania's primary rationale for promoting the state court action is that its jurisdiction is "unquestioned." Dkt. No. 45-1 at 31. But the state court's jurisdiction is only "unquestioned" because

- 18 -

Romania chose to waive its alleged FSIA protection there. If Romania merely cared about "avoid[ing] any potential delay caused by disputes regarding foreign sovereign immunity" (Dkt. No. 57 at 10-11), it could just as easily have explicitly waived immunity here. The fact that it did not can only be explained by Romania's preference to litigate this case in state court, and the Court will not reward this gamesmanship by abstaining. Conversely, Romania's argument that Paul Philippe engaged in forum shopping by rushing to federal court is illogical (see Dkt. No. 45-1 at 23-24); both parties are equally natural plaintiffs in preventing sale of the Painting and are equally entitled to their choice of forum. The strength of evidence on this factor alone counsels the Court against abstention.

The ninth factor, choice of law, slightly favors the state court. The central issues of both actions — succession to King Carol I's estate and removal of the Painting from Romania — will turn on interpretations of Romanian law (see Dkt. Nos. 1 ¶ 15; 45-1 at 14), which the state and federal courts are equally equipped to handle. Nevertheless, the Court recognizes New York's inherent interest in the business transactions that occur within its borders. See Bakalar v. Vavra, 619 F.3d 136, 144 (2d Cir. 2010) (acknowledging "the compelling New York interest to preserve the integrity of transactions and prevent the state

from becoming a marketplace for stolen goods" (internal quotation omitted)).

On balance, New York's general interest in preserving the integrity of transactions within its borders is not enough to overcome the Court's serious concerns of forum shopping here. Where the federal and state courts have equal ability to dispense the rights of all necessary parties and near-equal procedural standing, defendant's preference for the state proceeding (as exhibited by its waiver of the FSIA) is not a sufficient basis for this Court to forgo its jurisdictional obligation. In order to prevent "the rank forum shopping" apparent here (874 F. Supp. 2d at 308), the Court will not abstain. Romania's motion is denied on this point.[2]

### B. Stay

For the same reasons, the Court declines to stay this case. District courts have wide discretion over whether to stay a federal proceeding to allow resolution of a similar pending state action. Clarkson Co. v. Shaheen, 544 F.2d 624, 629 (2d Cir. 1976). The power to stay is incidental to the power of the courts to manage their dockets to promote judicial economy. Louis Vuitton Malletier S.A. v. LY USA, Inc., 676 F.3d 83, 96

---

[2] Because the Court denies Romania's request on the basis of the Wilton factors, it needs not consider Paul Philippe's arguments regarding res judicata and collateral estoppel.

- 20 -

(2d Cir. 2012). "In deciding whether to stay a case where there is a pending state court action, courts consider the following factors:

> [i] considerations of comity; [ii] promotion of judicial efficiency; [iii] adequacy and extent of relief available in the alternative forum; [iv] identity of parties and issues in both actions; [v] likelihood of prompt disposition in the alternative forum; [vi] convenience of the parties, counsel and witnesses; and [vii] possibility of prejudice to a party as the result of the stay.

Wells Fargo Bank, Nat'l Ass'n v. Patel, 2025 WL 844161, at *10 (S.D.N.Y. Mar. 18, 2025).

Unsurprisingly given the related concerns over wise judicial administration, these factors contemplate similar issues as the Wilton abstention factors. An extended examination of these factors is therefore not necessary, since the above analysis demonstrates that the federal and state courts are equally poised on the issues of efficiency and timeliness, convenience, relative expertise, identity of the parties and issues, and the relief available. Moreover, staying the instant case would impermissibly further Romania's forum shopping. In the interest of fairness, the Court declines to stay this action. Romania's motion to stay is denied.

## Conclusion

Romania's motion to dismiss is granted as to Paul Philippe's replevin claim and denied as to Christie's interpleader claim and Accent Delight's cross-claim. Romania's motion for abstention or stay is denied.

So ordered.

Dated:  New York, New York
        December 18, 2025

*Louis L. Stanton*
LOUIS L. STANTON
U.S.D.J.